UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

WOODARD-CM, LLC,

      Plaintiff,

vs.

SUNLORD LEISURE PRODUCTS, INC.
d/b/a PATIO RENAISSANCE,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Woodard-CM, LLC ("Plaintiff" or "Woodard"), by and through undersigned counsel, hereby files its Complaint against Defendant, Sunlord Leisure Products, Inc. d/b/a Patio Renaissance ("Defendant" or "Sunlord"), and alleges as follows:

## THE PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 650 S. Royal Lane, Suite 100, Coppell, TX 75019.

2.      Defendant is a corporation organized and existing under the laws of the State of California, with an address at 9118 7th Street, Rancho Cucamonga, California 91730.

## JURISDICTION AND VENUE

3.      This is an action for breach of contract, and for declaratory and other relief pertaining to a settlement agreement with an effective date of August 29, 2019 between the parties (the "Settlement Agreement"), which arose out of a prior lawsuit in the United States District Court for the Southern District of Florida, styled *Woodard-CM, LLC v. Sunlord Leisure Products, Inc.* Case

1

19-cv-22907-CMA (the "First Southern District of Florida Action").

4.      The parties are citizens of different states within the meaning of 28 U.S.C. § 1332, and upon information and belief, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, 2201 and 2202, and the doctrine of supplemental jurisdiction, as set forth in 28 U.S.C. §1367.

6.      Upon information and belief, personal jurisdiction is proper in that Defendant operates, conducts, engages in, or carries on a business or business venture in this State, and the Southern District of Florida, within the meaning of Fla. Stat. § 48.193(1)(a)(1).

7.      Upon information and belief, personal jurisdiction is proper in that Defendant is engaged in substantial and not isolated activity within this State, and the Southern District of Florida, within the meaning of Fla. Stat. §48.193(2) for the reasons set forth below.

8.      Defendant profits from the outdoor furniture industry in this State and the Southern District of Florida, which are areas well-known for optimal weather to enjoy outdoor furniture year-round.

9.      Defendant engages with at least thirty (30) retailers in this State (and approximately ten in the Southern District of Florida alone) to sell, advertise, and market outdoor furniture.

10.     Defendant contracts with at least one salesperson dedicated to the Florida market to sell, advertise, and market outdoor furniture.

11.     Upon information and belief, Defendant's salesperson dedicated to the Florida market, Justin Pfahl, has been publicly recognized by Defendant for outstanding sales in the Florida market:

2



12.     Upon information and belief, Defendant has received payments from Florida consumers purchasing Sunlord products.

13.     Defendant sells outdoor furniture products under the trade name and trademark PATIO RENAISSANCE.

14.     Defendant owns and operates the websites www.patiorenaissance.net and www.patiorenaissance.com that advertise and market infringing products to customers in this State and the Southern District of Florida.

15.     Defendant entices Florida customers to purchase its infringing products through specific retailers in this State and the Southern District of Florida via those websites.

16.     In fact, Defendant's websites specifically intend to interact with residents of this

3

State.  Across the top of its website, Defendant displays a "WHERE TO BUY" section, which then immediately tells Florida consumers where they can purchase the Defendant's products within the Southern District of Florida:



17.     Defendant also advertises and markets its infringing products to customers in this State and the Southern District of Florida, and communicates with customers in this State and the Southern District of Florida, through the web page: https://www.facebook.com/Patio-Renaissance-286586978080458/.

18.     For example, in response to a customer's request for the Defendant's Florida representative, Sunlord responded with its Florida representative's contact information:



19.     Defendant promotes Florida retailers through at least the following web page: https://www.facebook.com/Patio-Renaissance-286586978080458/.  For example, Defendant features photographs of Florida retailers that sell, advertise, and market Defendant's products, such as Bruce and Iris Sissler of Inside Out Patio, a Florida business located in the Southern District of Florida, and Debbie Stegman of Elegant Outdoor, another Florida business.

20.     Venue is proper because Defendant solicits, transacts, and is doing business within

the State of Florida, including in the Southern District of Florida, and Defendant's products can be viewed online by Florida residents (and specifically residents within this judicial district), and can be purchased by Florida residents (including those within this judicial district) at the Defendant's showrooms located throughout the State of Florida, including one located in Coral Gables, Florida.

21.     Upon information and belief, venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or acts giving rise to the claim occurred in this District.

22.     Venue is also proper under 28 U.S.C. § 1391 in that the Defendant's contacts are sufficient to subject it to personal jurisdiction in the Southern District of Florida, for reasons set forth above.

23.     Venue is also proper in this District because the Settlement Agreement resolved the First Southern District of Florida Action. Defendant has infringed, and continues to intentionally infringe on Plaintiff's rights, notwithstanding the Defendant's representations and warranties in the Settlement Agreement.

24.     On or about August 29, 2019, and to induce Plaintiff to enter into the Settlement Agreement and to dismiss the First Southern District of Florida Action, Defendant represented that it would:

> [F]orever refrain from, directly or indirectly, copying, making, importing, distributing, offering for sale, selling, and/or directing or causing any third party, included but not limited to, manufacturers, distributors, and independent contractors, to copy, make, import, distribute, offer for sale, or sell the Accused Furniture Designs, the Mallin Furniture Designs (including without limitation those shown in Exhibit A), any substantially similar variations thereof (consistent with legal standards in or interpreting the Copyright Act), and/or any variations that are likely to cause confusion (consistent with the legal standards in or interpreting the Lanham Act), with the Mallin Furniture Designs (collectively, the "Enjoined Designs").

*See* Section 2.2 of the parties' Settlement Agreement, a copy of which is attached hereto as **Exhibit A**.

25.     As part of the Settlement Agreement, Plaintiff and Defendant entered into a voluntary Stipulation of Dismissal of the First Southern District of Florida Action. In doing so, Defendant has purposefully availed itself of or otherwise submitted to the jurisdiction of this Court.

26.     Notwithstanding the Defendant's representations that any and all activity pertaining to the Enjoined Designs would forever cease, Defendant's advertising, marketing, offering for sale, sales, and other uses of the Enjoined Designs continues to this day.

*FACTUAL BACKGROUND WHICH*
*FORMED THE BASIS OF THE FIRST ACTION*

27.     Plaintiff is a manufacturer of high-quality furniture products, including the outdoor furniture collections that are the subject of this action, which have garnered great commercial success and recognition in the trade and among consumers.

28.     Plaintiff is also the owner of, *inter alia,* the MALLIN and MALLIN CASUAL FURNITURE trademarks.

29.     Long prior to the unlawful conduct of the Defendant, Plaintiff and/or its predecessor(s) adopted and began offering for sale several lines of outdoor furniture under various collection names, including, but not limited to: "ALBANY" and "ECLIPSE" (collectively, "Plaintiff's Marks")

30.     Defendant is a competitor of Woodard in the outdoor furniture industry.

31.     Both Woodard and the Defendant have attended the same trade shows and exhibitions in the past.  For example, both parties attended and were exhibitors at the International Casual

Furnishings Association Outdoor Furnishings Preview Show ("Preview Show"), held on July 16 –
July 18, 2019.

32.     Upon information and belief, and as part of its pre-show activities and promotion in
advance of the Preview Show in 2019, Defendant circulated price sheet(s) and/or catalog(s)
("Defendant's Materials") which included several lines of outdoor furniture that are identical and/or
substantially similar copies of Plaintiff's furniture lines.

33.     Upon information and belief, Defendant's Materials included lines of furniture
offered under the identical and infringing names "ALBANY" and "ECLIPSE" (collectively, the
"Infringing Marks"), among others.

34.     Additionally, upon information and belief, each of the furniture designs offered under
the Infringing Marks by the Defendant were an identical and/or substantially similar copy of the
furniture designs offered under each of the Plaintiff's Marks.

35.     Moreover, upon information and belief, the Defendant's Materials included stock
numbers used by the Plaintiff, and Defendant purported to offer the furniture sold under the
Infringing Marks at a lower price than that offered under Plaintiff's Marks.

36.     Finally, upon information and belief, the Defendant's Materials included photographs
of the Plaintiff's actual furniture sold under the Plaintiff's Marks, and were not photographs of
furniture independently produced by the Defendant.

37.     Accordingly, Defendant unfairly benefitted, and the Plaintiff was and has been
irreparably harmed, by the unfair acts of the Defendant, particularly in light of the Preview Show
being a critical and highly promoted event in the outdoor furniture industry.

## *THE FIRST ACTION AND THE PARTIES'*
## *2019 SETTLEMENT AGREEMENT*

38.     On July 12, 2019, Woodard filed the First Southern District of Florida Action, and asserted the following claims: (a) Count I – Trademark Infringement under 15 U.S.C. §1125(a); (b) Count II – Federal Unfair Competition, False Description, and False Designation of Origin, 15 U.S.C. § 1125(a); and (c) Count III - False Designation of Origin and Passing Off Under 15 U.S.C. § 1125(a).

39.     The following month, on August 29, 2019, the parties entered into the Settlement Agreement to resolve the First Southern District of Florida Action.  **Exhibit A**.

40.     On September 6, 2019, the parties filed a Joint Stipulation of Dismissal With Prejudice of the First Southern District of Florida Action.  **Exhibit B**.

## *THE TERMS OF THE SETTLEMENT AGREEMENT*

41.     There are several key provisions in the Settlement Agreement that give rise to the instant lawsuit.  As an initial matter, Defendant acknowledged and agreed that Plaintiff "is the owner of, among others, the marks 'MALLIN,' 'ALBANY', 'ECLIPSE', 'PASSAGE,' and 'VOLARE' and the collections names shown in Exhibit A (the 'Woodard Trademarks') used in connection with outdoor furniture collections it manufactures and sells under its distinctive Mallin line of outdoor furniture designs (the 'Mallin Furniture Designs'), as shown in Exhibit A."  *See* **Exhibit A** at ¶1.1.

42.     A reproduction of the Albany designs, which are a collection of the Mallin Designs and are part of "Exhibit A" to the Settlement Agreement, are depicted below:



43.     Defendant acknowledged Plaintiff's proprietary rights to the Mallin Designs, including that the Albany Designs are "valid and enforceable rights." *See* **Exhibit A** at ¶5.

44.     Second, under Section 2.1, the Defendant represented that it would not use, nor would it direct or cause any third party to use, any of the Plaintiff's trademarks:

> 2.1.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never used, and hereby promise not to use, and/or direct or cause any third party, including but not limited to, manufacturers, distributors, and independent contractors to use any corporate name, trade name, trademark, service mark, brand name, collection name, product name, slogan, logo-design, label, packaging, advertisement, price book, description, phrase, social media page or domain name incorporating or comprising the Woodard Trademarks, either alone or in combination with any other words, letters, graphical depictions or color combinations, including any and phonetic or foreign equivalents thereof, or any confusingly similar variations thereof, and shall further refrain from using any of Woodard's intellectual property, including collection names, stock numbers, photographs, or other indicia (each and all of the foregoing referred to hereinafter as the "Enjoined Marks"), in connection with furniture or other competing products in the United States and throughout the world.

45.     Third, and under Section 2.2 of the Settlement Agreement, the Defendant represented that it "has never and shall forever refrain" copying, making, distributing, and engaging in other conduct pertaining to the "Enjoined Designs," as defined therein:

> 2.2.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never and shall forever refrain from, directly or indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to copy, make, import, distribute, offer for sale, or sell the Accused Furniture Designs, the Mallin Furniture Designs (including without limitation those shown in Exhibit A), any substantially similar variations thereof (consistent with legal standards in or interpreting the Copyright Act), and/or any variations thereof that are likely to cause confusion (consistent with legal standards in or interpreting the Lanham Act) with the Mallin Furniture Designs  (collectively, the "Enjoined Designs").

46.     Fourth, and under Section 3 of the Settlement Agreement, the Defendants represented that it "has never and shall forever refrain" from any advertising or marketing pertaining to the Enjoined Marks and/or the Enjoined Designs:

3. <u>No Further Advertising or Marketing of the Enjoined Marks and/or Enjoined Designs</u>. As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never, and shall forever refrain from using, licensing, advertising or marketing and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to use, license, advertise or market any of the Enjoined Marks and/or Enjoined Designs, including without limitation, in a printed medium, such as a magazine, newspaper, brochure, price sheet, price book, flyer, leaflet, on signage, billboards, or point of purchase displays, or in internet-based advertising, such as on any web site or social media page under Sunlord's possession, custody or control.

47. Fifth, the territory of the Settlement Agreement was not only worldwide, but it was "binding upon and shall inure to the benefit of each of the Parties hereto and their parents, subsidiaries, affiliates, related companies, manufacturers, distributors, licensors, licensees, officers, directors, employees, agents, independent contractors, and representatives, and each of the foregoing's heirs, successors, successors-in-interest, entities that are acquired by a Party, and assigns." *See* **Exhibit A** at ¶11.1 and ¶11.4.

48. Lastly, the Settlement Agreement provides that "[i]n the event that litigation is instituted to enforce this Agreement, the prevailing party ***shall be entitled to specific performance, including preliminary and permanent injunctive relief, without any bond required***. EACH PARTY WAIVES ITS RIGHT TO TRIAL BY JURY. ***The prevailing party in any action for enforcement or breach shall recover its attorneys' fees and costs in the amount determined reasonable by the Court***. *See* **Exhibit A** at ¶11.3 (emphasis added).

*DEFENDANT'S WILLFUL VIOLATIONS AND*
*BREACHES OF THE SETTLEMENT AGREEMENT*

49. Plaintiff has discovered that Defendant is violating Sections 2.2 and 3 of the

Settlement Agreement by selling and advertising for sale furniture designs that are copies of the Mallin Designs, namely Woodard's distinctive "ALBANY" furniture designs (the "Enjoined Designs").

50.     As shown in paragraph 54 below, the unique visual elements of the Plaintiff's distinctive "ALBANY" furniture design are copied by the Enjoined Designs.

51.     The Enjoined Designs are advertised, marketed, and sold by the Defendant's authorized retailers.  One such example is Galaxy Home Recreations ("Galaxy"), as reflected on the Defendant's website:



52.      Defendant's Enjoined Designs have been and continue to be offered for sale, at a minimum, at Galaxy's showroom in Broken Arrow, Oklahoma and on Galaxy's website at https://www.galaxyhomerecreation.com/store/products/d/18810/OUTDOOR/Patio/Patio-Furniture/Aberdeen-6pc-Collection.

53.      Upon information and belief, the Enjoined Designs have also been sold and offered for sale in this District at Patio Shoppe in Coral Springs, Florida.

54.      The Galaxy website advertises and offers for sale the Enjoined Designs under the name "**PATIO RENAISSANCE ABERDEEN 6PC COLLECTION.**"  Notably, the description clearly states: **"Aberdeen Collection by Patio Renaissance.**"



55.      Defendant's breach of the Settlement Agreement is clearly evidenced from a side-by-side comparison of the Plaintiff's designs, compared to the Defendant's Enjoined Designs, a few examples of which are shown below:

| **Plaintiff's Albany Swivel Rocking Lounge** | **Defendant's Aberdeen Swivel Rocker** |
|:---:|:---:|



| **Plaintiff's Albany Loveseat** | **Defendant's Aberdeen Loveseat** |
|:---:|:---:|



56.     Defendant's breach of the Settlement Agreement is not only evidenced by online photographs of the Enjoined Designs, but by the actual products themselves. On or about May 28, 2020, products embodying the Enjoined Designs were purchased directly from Galaxy. Photographs of the Plaintiff's "Mallin" design alongside the Defendant's Enjoined Designs are shown below:





57.     As shown below, and when comparing the width of the seat area of one of the Plaintiff's "Albany" pieces with the corollary Enjoined Design piece, the width is the same:



58.     Similarly, when comparing the spacing between the back bars of the Plaintiff's "Albany" piece with the corollary Enjoined Design piece, the width is once again the same:

Back Bar spacing – Same at 7 ¾"




59.     Plaintiff sent Defendant a Notice of Breach Letter on June 15, 2020, although it was not required under the Settlement Agreement. *See* **<u>Exhibit C</u>**.  The Notice of Breach Letter was sent not only to immediately resolve the Defendant's violations of the Settlement Agreement, but also in an effort to avoid seeking judicial intervention.

60.     However, and despite being provided evidence of Defendant's ongoing breaches, Defendant refused to accept responsibility for its wrongful conduct, and instead claimed that the "Aberdeen" line of products is not part of the Defendant's collections.

61.     In an effort to avoid escalating the matter further, Plaintiff provided Defendant's counsel with a link to the Galaxy web page where the Enjoined Designs were being sold and clearly advertised as "Patio Renaissance Aberdeen 6PC Collection." In response, Defendant (through

18

counsel) continued to deny its multiple breaches of the Settlement Agreement, and instead claimed:

> Your email is duly received and forwarded to my client for confirmation. According to our client, Galaxy Home Recreation IS one of their current customers.  However, our client never sold anything under the "Aberdeen" collection as they do not have this collection.  Our client is unaware and not sure why that product is under their company name on this customer's website.   Please look at our client's website and check out its catalog at www.patiorenaissance.net.  Nothing by the name of Aberdeen Collection is there.

62.     Defendant's representations are not only false based on the allegations set forth above, but also in light of an investigation carried out on behalf of Plaintiff, as detailed in an investigative report. A true and correct copy of the investigative report (the "Report") is attached hereto as **Exhibit D.**

63.     Specifically, on or about June 25, 2020, Plaintiff's investigator visited the Defendant's retailer, Galaxy Home Recreation (located at 4900 W. Kenosha Street, Broken Arrow, Oklahoma):



64.     As shown in the Report, Plaintiff's investigator located the Enjoined Designs, which were "prominently displayed near the front of the store:"



65.     The tags attached to the Enjoined Designs refer to the source of the Aberdeen Collection as "PAREN," an abbreviation for "**PA**TIO **REN**AISSANCE"; and, as confirmed by the Report, even the "table brochure reference[d] Patio Renaissance Sunlord Leisure Products:"



66.     A closer view of the table brochure, or point-of-purchase display, is displayed immediately below:



67.     As discussed in the Report, the Galaxy representative confirmed that the Enjoined Designs "were from Patio Renaissance."

68.     Due to its ongoing and willful violations, Defendant has committed material breaches of the Settlement Agreement.

69.     Plaintiff has not only been damaged monetarily by Defendant's wrongful conduct, but such conduct has caused and will continue to cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to

suffer great and irreparable injury.

70.     For example, in the outdoor furniture industry, there is a "Preview Show" held annually in July where manufacturers, such as Woodard and Sunlord, display and highlight their new collections, and buyers make the majority of their purchasing decisions for the entire year.

71.     Although the Preview Show for 2020 has been cancelled due to the Covid-19 pandemic, buyers in the industry are continuing to make their purchasing decisions in July. Therefore, Woodard and other outdoor furniture manufacturers are running "Preview" specials to entice buyers to purchase their collections.

72.     As a result, and given the importance of the July time period when buyers make their purchasing decisions for the entire year, Plaintiff files the instant lawsuit alleging breach of contract and seeking declaratory and other relief, including a temporary restraining order, preliminary and permanent injunction, and damages.

73.     Plaintiff has performed all conditions precedent as required by contract and governing law.

### COUNT I – BREACH OF THE SETTLEMENT AGREEMENT

74.     Plaintiff incorporates herein each and every allegation set forth in paragraphs 1 through 73 as if fully set forth herein.

75.     On August 29, 2019, Plaintiff and Defendant entered into the Settlement Agreement.

76.     The Settlement Agreement constitutes a valid and existing contract between the parties.  Plaintiff performed its obligations under the Settlement Agreement by agreeing to dismiss the First Action in the Southern District of Florida.

77.     By engaging in the conduct described above, Defendant has materially breached the

Settlement Agreement, including but not limited to, Sections 2.2 and Section 3 of the Settlement Agreement.

78.     Plaintiff has incurred damages, as well as attorneys' fees, as a result of Defendant's multiple breaches and seeks recovery on this basis, as well as specific performance as to the obligations under the Settlement Agreement.

79.     While Plaintiff has suffered monetary damages, Defendant's acts have also harmed Plaintiff's reputation, damaged Plaintiff's goodwill, and upon information and belief, have and will continue to divert sales from Plaintiff.

80.     Defendant's aforesaid acts have caused and will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will be continued and Plaintiff will continue to suffer great and irreparable injury.

81.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff requests that the Court grant the relief requested in the Prayer for Relief below.

### COUNT II – DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201

82.     Plaintiff incorporates each and every allegation set forth in paragraphs 1 through 73 as if fully set forth herein.

83.     This claim is against the Defendant for declaratory relief under 28 U.S.C. § 2201, and for necessary or proper relief based on a declaratory judgment or decree under 28 U.S.C. § 2202.

84.     On August 29, 2019, Plaintiff and Defendant entered into the Settlement Agreement.

85.     In accordance with the Settlement Agreement, Plaintiff performed its obligations by dismissing the First Action in the Southern District of Florida.

86. Plaintiff owns and has enforceable rights in the Mallin Furniture Designs, as defined in the Settlement Agreement.

87. In paragraph 2.2 of the Settlement Agreement, Defendant acknowledged and agreed that it "ha[d] never and shall forever refrain from, directly or indirectly, copying, making, importing, distributing, offering for sale, selling, and/or directing or causing any third party, included but not limited to, manufacturers, distributors, and independent contractors, to copy, make, import, distribute, offer for sale, or sell the Accused Furniture Designs, the Mallin Furniture Designs (including without limitation those shown in Exhibit A), any substantially similar variations thereof (consistent with legal standards in or interpreting the Copyright Act), and/or any variations that are likely to cause confusion (consistent with the legal standards in or interpreting the Lanham Act), with the Mallin Furniture Designs (collectively, the "Enjoined Designs")."

88. A bona fide, actual, and present justiciable controversy has arisen and now exists between Plaintiff (and particularly with respect to Plaintiff's Mallin Furniture Designs) and the Defendant (and particularly with respect to its conduct pertaining to the Enjoined Designs), concerning Defendant's advertising, marketing, offering for sale, and sales of the Enjoined Designs, which trigger the Defendant's violations of the Settlement Agreement.

89. Plaintiff desires a judicial determination regarding the Defendant's advertising, marketing, offering for sale, and sales of the Enjoined Designs, which trigger the Defendant's violations of the Settlement Agreement, and a declaration that:

   a. Defendant is in violation of the Settlement Agreement, particularly as it relates to Sections 2.2 and 3;

   b. Plaintiff is entitled to the remedy of monetary damages as a result of Defendant's breaches of the Settlement Agreement;

     c.   Plaintiff is entitled to the remedy of specific performance, and an order from the Court compelling the Defendant to immediately comply with all of the terms and obligations in the Settlement Agreement; and

     d.   Plaintiff is entitled to the remedy of attorneys' fees pursuant to Section 11.3 of the Settlement Agreement;

90.    As a result, there is a bona fide dispute between the parties, and a judicial declaration is necessary and appropriate in order that the parties may ascertain their respective rights in connection with the Settlement Agreement.

91.    Pursuant to 28 U.S.C. §2201, Plaintiff is entitled to a declaratory judgment.

92.    Pursuant to 28 U.S.C. §2202, Plaintiff is entitled to necessary or proper relief based on a declaratory judgment or decree.

WHEREFORE, Plaintiff, Woodard-CM, LLC requests that the Court grant the relief sought in its Prayer for Relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court will enter judgment in its favor and against Defendant as follows:

A.    That the Court enter a temporary restraining order enjoining the Defendant from continuing to breach the Settlement Agreement;

B.    That the Court enter preliminary and permanent injunctive relief enjoining the Defendant from continuing to breach the Settlement Agreement (as specifically provided for under Section 11.3 of the Settlement Agreement);

C.    That the Plaintiff have the remedy of specific performance, and that the Court order the Defendant to comply with all the of the terms and obligations in the Settlement Agreement;

D.      That the Defendant be ordered to pay damages adequate to compensate Plaintiff for Defendant's material breaches of the Settlement Agreement;

E.      That the Defendant be ordered to pay Plaintiff's attorneys' fees as a result of Defendant's material breaches of the Settlement Agreement (as specifically provided for under Section 11.3 of the Settlement Agreement);

F.      That the Defendant be ordered to provide an accounting;

G.      That Plaintiff recover Defendant's profits and the damages of Plaintiff arising from Defendant's breaches of the Settlement Agreement;

H.      That Defendant's officers, directors, agents, servants, employees, retailers, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained from engaging in any conduct that breaches the parties' Settlement Agreement;

I.      That Defendant be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, wrappers, inventory, advertisements, internet advertising and other written or printed material in the possession or control of Defendant, or third party advertisers and retailers of Defendant's products which pertain to the Enjoined Designs (including but not limited to the Defendant's "Aberdeen" collection), and any formative variations thereof, and all plates, molds, matrices, and other means from making the aforesaid items;

J.      That Defendant be required to recall and deliver up for destruction all goods, labels, signs, prints, packages, wrappers, inventory, advertisements, internet advertising and other written or printed material in the possession or control of Defendant, or third-party advertisers and retailers of Defendant's products that pertain to the claims found by this Court to be in violation of law;

K.     That Defendant be ordered to forthwith identify to Plaintiff all active and passive participants in the acts complained of herein and supply to Plaintiff a complete list of the persons and/or entities from whom Defendant purchased, and to whom Defendant distributed and/or sold any of the Enjoined Designs (or any similar variations thereof), including but not limited to the "Aberdeen" collection;

L.     That the Court enter a declaratory judgment pursuant to 28 U.S.C. §2201, finding that:

    1.     Defendant is in violation of the Settlement Agreement, particularly as it relates to Sections 2.2 and 3;

    2.     Plaintiff is entitled to the remedy of monetary damages as a result of Defendant's breaches of the Settlement Agreement;

    3.     Plaintiff is entitled to the remedy of specific performance, and an order from the Court compelling the Defendant to immediately comply with all of the terms and obligations in the Settlement Agreement; and

    4.     Plaintiff is entitled to the remedy of attorneys' fees pursuant to Section 11.3 of the Settlement Agreement;

M.     That, pursuant to 28 U.S.C. §2202, Plaintiff have and recover further necessary or proper relief, based on the Court's declaratory judgment or decree.

N.     That Plaintiff have and recover both pre-judgment and post-judgment interest on each and every damage award;

O.     That Plaintiff have and recover its taxable costs and disbursements herein; and

P.     That Defendant be directed to file with this Court, and to serve upon Plaintiff, a written report under oath setting forth in detail the manner of compliance with the Plaintiff's prayer for relief;

Q.     That Plaintiff have and recover such further relief as the Court may deem just and

proper.

Dated: July 27, 2020                                    Respectfully submitted,

                                                        /s Meredith Mendez
                                                        John Cyril Malloy, III
                                                        Florida Bar No. 964,220
                                                        jcmalloy@malloylaw.com
                                                        Oliver Alan Ruiz
                                                        Florida Bar No. 524,786
                                                        oruiz@malloylaw.com
                                                        Meredith Frank Mendez
                                                        Florida Bar No. 502,235
                                                        mmendez@malloylaw.com
                                                        Jonathan Woodard
                                                        Florida Bar No. 0096553
                                                        jwoodard@malloylaw.com
                                                        **MALLOY & MALLOY, P.L.**
                                                        2800 S.W. 3rd Avenue
                                                        Miami, FL 33129
                                                        Telephone: (305) 858-8000
                                                        *Counsel for Plaintiff, Woodard-CM, LLC*