**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 20-cv-23104-KMW

WOODARD-CM, LLC,

 Plaintiff,

v.

SUNLORD LEISURE PRODUCTS, INC. d/b/a PATIO RENAISSANCE; PRESTIGE INTERNATIONAL INVESTMENTS CO., LTD.; ALBERT LORD f/k/a AI PING LUO; SUNRISE CASUAL FURNITURE, INC.; MARK GORR; GORR & ASSOCIATES, INC.; JUSTIN PFAHL; and PFAHL ENTERPRISES, INC.

 Defendants,
_____/

**DEFENDANT SUNLORD LEISURE PRODUCTS, INC.'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY FOR PRE-SETTLEMENT CONDUCT AND INCORPORATED MEMORANDUM OF LAW**

Case No. 20-cv-23104-KMW

Defendant Sunlord Leisure Products, Inc. ("Sunlord") hereby responds as follows:

## **INTRODUCTION**

Plaintiff Woodard argues that the release contained in section 9 of the parties' Agreement[1] was not supported by any material monetary consideration and carved out claims based on the pre-settlement conduct Woodard also bases its current claims on. Woodard's arguments are belied by the Agreement's own express language, and the Court need not look beyond the Agreement to enter partial summary judgment in Sunlord's favor. Contrary to Woodard's allegations, Sunlord's representations that it had not engaged in copying, marketing, or sale of furniture bearing Woodard's Mallin designs at the time the Agreement was executed—representations which are themselves true[2]–were not the only consideration for the Agreement. The Agreement imposed numerous prospective obligations on Sunlord and therefore is not somehow unenforceable for lack of consideration. Further, the release contained in Section 9 is broad and all-encompassing, and covers all claims, *whether known or unknown*, that Woodard could have asserted in the Prior Suit. The first sentence of the Agreement, which Woodard's Response latches onto yet which merely includes a carveout for claims to enforce the Agreement itself, cannot be read to modify the Agreement's broad release language and carve out pre-Agreement conduct that also formed the basis for the Prior Suit. Woodard's proposed interpretation would eviscerate the Agreement's release language and render it ineffective and meaningless. Woodward would have released

---

[1] This reply adopts and uses the defined terms contained in Sunlord's Statement of Material Facts in Support of the Motion [D.E. 125].

[2] Woodard's Response claims that because Sunlord has chosen not to litigate the veracity of these representations at the summary judgment stage, it somehow has admitted making the alleged misrepresentations referenced in Woodard's Complaint. However, the simple reason why the Motion does not address this issue is because it is not appropriate to resolve it by summary judgment. Apart from the fact that these allegations are not material to Sunlord's Motion, they are also refuted by the evidence presented by Sunlord in responding to Woodard's Motion for Sanctions [D.E. 62].

nothing.  It also contradicts Woodard's agreement to dismiss the Prior Suit's claims with prejudice and the Agreement's own non-reliance provision.

Woodard also argues that *res judicata* cannot apply to bar any claims based on pre-Agreement conduct in this case because the *res judicata* effect of its dismissal of the Prior Suit with prejudice is controlled by the Agreement and cannot bar a claim for breach of the Agreement itself.  Woodard apparently takes the position that, simply by styling its claim for breach of pre-Agreement conduct against Sunlord as one for breach of the Agreement itself, Woodard can circumvent the Agreements' all-encompassing release language.  Florida law is clear that Woodard cannot maintain any such claims for pre-Agreement conduct against Sunlord, regardless of how they are pled, because Sunlord both released them and dismissed them with prejudice.

Finally, Woodard argues the *Mergens* rule cannot apply to bar Woodard's fraudulent misrepresentation claims because the Prior Suit did not plead a fraud claim against Sunlord.  While the Prior Complaint did not plead a fraud claim, it did allege fraud or dishonesty on the part of Sunlord, such that these claims fall under the ambit of the *Mergens* rule.  As Woodard well knows, its claims in the Prior Suit are based on the same type of conduct alleged in this litigation—i.e., that Sunlord willfully and unlawfully used Woodard's trademarks and marketing materials and knowingly and falsely replicated, marketed, and sold Woodard's furniture designs as its own in order to profit at Woodard's expense.  Regardless of whether they were pled as fraud claims or Lanham Act claims, Woodard's claims in the Prior Suit are based on the same allegedly fraudulent and dishonest conduct as its fraud claim in the instant case and are therefore barred by *Mergens*.

## ARGUMENT

1. *The Agreement's release is not void or unenforceable for lack of consideration.*

Woodard's Response argues, among other things, that the parties' Agreement could not

have released Sunlord from any pre-Agreement conduct that occurred before the Agreement's August 29, 2019 effective date because Woodard received no monetary consideration from Sunlord other than Sunlord's representations that it had never engaged in the pre-Agreement use of Woodard's trademarks in connection with its sale of furniture and that it had not otherwise copied, sold, or marketed furniture bearing the Enjoined Designs. These allegations are refuted by the terms of the Agreement itself, wherein Sunlord agreed to a number of prospective post-Settlement obligations, including, among other things: (1) the obligation not to advertise or market any furniture bearing the Enjoined Designs or engage in any advertising or marketing using Woodard's trademarks (*see* Agreement, § 3); (2) the obligation not to further contest or challenge Woodard's trademarks or its Mallin furniture designs (*see id.*, § 5); (3) the obligation not to use or distribute the price sheets attached as exhibits to the Agreement (*see id.,* § 4); (4) a release from Sunlord in favor of Woodard (*id.*, § 8); and (5) a waiver of jury trial in any action brought to enforce the Agreement or to seek a preliminary or permanent injunction from Sunlord (*id.*, § 11.3).

These provisions constitute adequate consideration for the Agreement. *See, e.g.*, *In re O'Lone*, Case No. 3:00-bk-5003-JAF, 2009 WL 10742936, at *4 (Bankr. M.D. Fla. Aug. 20, 2009) (finding parties' release of claims constituted adequate consideration for settlement agreement (*citing Citibank Int'l v. Mercogliano*, 574 So. 2d 1190 (Fla. 3d DCA 1991)). In fact, as Woodard well knows, it relied on the Agreement to obtain a preliminary injunction against Sunlord shortly after it commenced this litigation. Accordingly, to the extent Woodard argues the Agreement was not supported by any consideration other than Sunlord's warranties or representations that it had not previously engaged in conduct prohibited by the Agreement prior to the Agreement's execution such that the Agreement's release is somehow rendered unenforceable, that argument is belied by the Agreement's terms.

2. *The Agreement's release language bars Woodard from maintaining claims against Sunlord based on pre-Agreement conduct.*

The Agreement's release language is all-encompassing and bars any claims Woodard may have had against Sunlord based on pre-Agreement conduct. Nor does the first sentence of the release, which merely preserves claims to enforce the Agreement based on "rights, obligations, duties, liabilities, and claims . . . expressly created by th[e] Agreement,"[3] somehow alter the scope of the release, which is broadly worded and includes "all rights, claims, appeals, demands, and causes of action, whether known or unknown, that were asserted or that could have been asserted in the [Prior Suit]."[4]

Settlement agreements are contracts and are governed by principles of Florida's general contract law. *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). Florida law requires that a court interpret a contract according to its plain language and express terms. *Dirico v. Redland Estates, Inc.*, 154 So. 3d 355, 357 (Fla. 3d DCA 2014). In doing so, a court must attempt to interpret the contract in a manner that gives effect to each of the various provisions thereof, if reasonably possible. *Dew Seven, LLC v. Big Lots Stores, Inc.*, 354 Fed. App'x 415, 416-17 (11th Cir. 2009) (quoting *Fisher v. Certain Interested Underwriters at Lloyds Subscribing to Contract No. 242/99*, 930 So. 2d 756, 758-59 (Fla. 4th DCA 2006)). A contract's intended meaning "is not to be gathered from any one expression but from a general view of the whole writing, with all parts being compared, used, and construed, each with reference to the others." *Paddock v. Bay Concrete Indus., Inc.*, 154 So. 2d 313, 315-16 (Fla. 2d DCA 1963).

Here, the Agreement's release is broad and all-encompassing. It covers all "rights, claims, appeals, demands and causes of action, whether known or unknown, that were asserted or that

---

[3] Agreement, § 9.
[4] *Id.*

could have been asserted in the [Prior Suit]." "It is hornbook law that the execution of a valid release results in the termination of all rights covered by the agreement." *Hall v. Burger King. Corp.*, 912 F. Supp. 1509, 1520 (S.D. Fla. 1995); *see also Pettinelli v. Danzig*, 722 F.2d 706, 707-08 (11th Cir. 1984) (holding agreement and release executed by investors in corporation which settled all claims prior to agreement's effective date conclusively resolved all claims that arose prior to date of release); *Brooklands, Inc. v. Sweeney*, Case No. 14–81298–CIV, 2015 WL 1930239, at *5 (S.D. Fla. April 28, 2015) (granting motion to dismiss claim for fraudulent inducement to the extent it was based on pre-release conduct and the agreement contained a general release and a non-reliance provision confirming parties were not relying on the representations of the other in executing the agreement); *Plumpton v. Continental Acreage Dev. Co., Inc.*, 830 So. 2d 208, (Fla. 5th DCA 2002) (finding stipulation for settlement which contained general release as to all claims except for the rights expressed in the stipulation barred pre-release claims).

Despite the release's broad wording, Woodard argues it cannot have released its claims against Sunlord arising from pre-Agreement conduct because they were preserved by the release's first sentence, which preserves claims expressly created or retained by the Agreement. Woodard's proposed interpretation of the Agreement's release would render it meaningless. If the first sentence operated to preserve claims Woodard may have had against Sunlord stemming from its alleged pre-Agreement sale of furniture bearing the Enjoined Designs or its alleged use of Woodard's trademarks—the same conduct that formed the basis of Woodard's claims in the Prior Suit—the last sentence of the release would be rendered meaningless. Under Woodard's nonsensical interpretation, the release would not have operated to release any claims it had against Sunlord. Woodard's interpretation also renders the release inconsistent with section 7 of the Agreement, wherein Woodard agreed to release its claims in the Prior Suit with prejudice. If, as

Woodard contends, the first sentence of the release was intended to preserve pre-Agreement claims based on the same alleged conduct as the Prior Suit, Woodard would presumably not have agreed to dismiss the Prior Suit with prejudice. Woodard's proposed interpretation of the release language is also inconsistent with section 10.2 of the Agreement, which contains a non-reliance provision wherein Woodard confirmed it was not relying on any representations, statements, or promises of Sunlord in deciding to execute the Agreement, except as expressly stated therein. As the court noted in *Brooklands*, such non-reliance provisions are further evidence of a party's intent to generally release pre-settlement claims. *See Brooklands*, 2015 WL 1930239 at *5 (finding fraud claims based on pre-release settlement conduct and alleged misrepresentations and omissions during course of settlement agreement were unreasonable "particularly where, as here, the release agreement includes a clear, unambiguous non-reliance provision confirming the parties are not relying on the representations of the other. . . .").

The only reasonable way to interpret the first sentence of section 9 in concert with the rest of the Agreement is to conclude that the first sentence preserved claims based on conduct arising after the Agreement's effective date, not pre-Agreement claims which Woodard simply didn't assert or flesh out in the Prior Suit. For instance, if Sunlord had violated sections 2.1 and/or 2.2 of the Agreement by continuing to sell furniture bearing the Enjoined Designs after the Agreement's Effective Date, such a claim would be excluded from the release. Otherwise, section 9's final sentence, which makes clear that the release covers all "known or unknown" claims that Woodard could have asserted in the Prior Suit, would be rendered meaningless. Nor has Woodard otherwise pled a fraudulent inducement claim to set aside or rescind the Agreement based on Sunlord's alleged misrepresentations. Having elected to enforce the Agreement, as worded, Woodard is bound by the Agreement's release language.

Nor are the *Rosen* or *Mizner* cases Woodard cites in support of its position applicable. *Rosen v. Florida Ins. Guaranty Ass'n*, 802 So. 2d 291 (Fla. 2001), involved the issue of whether a settlement agreement executed by a law firm's former client contained a release or a covenant not to execute a judgment. *Rosen*, 802 So. 2d at 297-98. The court applied the general principal that the parties' intent controls the scope of their releases to conclude the agreement's language clearly included a covenant not to execute a judgment, not a release. *Id.* *Rosen* did not involve the interpretation of the breadth or scope of release language contained in a settlement agreement. Likewise, *Mizner Grand Condo. Ass'n, Inc.*, Case No. 08-82280-CIV, 2010 WL 2162902 (S.D. Fla. 2010), involved the issue of whether a release contained in a settlement agreement entered into between a condominium association and its developer for purposes of settling construction defects claims applied to release breach of insurance claims brought by the condominium association, as the developer's assignee, against the developer's insurer. *Mizner Grand Condo. Ass'n, Inc.*, 2010 WL 2162902, at *3-4. Here, there is no ambiguity as to the breadth of the release language or the scope of the claims it was intended to cover. The release unambiguously covers all claims Woodard did or could have brought in the Prior Suit, whether those claims were known to it or not. The Agreement's release language unambiguously bars any pre-Agreement claims. Sunlord's Motion must be granted.

      3. <u>Res judicata also bars any pre-Agreement claims Woodard seeks to assert against Sunlord.</u> [5]

Alternatively, Sunlord is entitled to summary judgment on Woodards' claims to the extent

---

[5] Woodard's argument that Sunlord's Answer and Defenses failed to raise a *res judicata* defense is disingenuous. Sunlord has a pending Motion to Dismiss Counts II, III, XXII, XXIII, and XXIV of Woodard's Complaint [D.E. 57] and the pleadings have not yet closed. Further, Sunlord's Answer and Affirmative Defenses to Counts I and XXV [D.E. 56], in paragraphs 12-14, raises defenses based on Woodard's release of any claims arising from pre-Agreement conduct, its waiver of any such claims, and the fact that its damages are limited by the Agreement's terms.

they arise from Sunlord's alleged pre-Agreement conduct because such claims are barred by the doctrine of *res judicata*. As part of the Agreement, Woodard dismissed the Prior Suit's claims with prejudice. A voluntary notice of dismissal with prejudice constitutes a final judgment on the merits for purposes of *res judicata*. *Openmind Solutions, Inc. v. Doe*, Case No. 12-21098-CIV-Ungaro, 2012 WL 13059259, at *2 (S.D. Fla. June 11, 2012). Where, as here, a voluntary dismissal with prejudice is based on a settlement agreement, the preclusive effect of the dismissal must be based on the terms of the settlement agreement itself. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004).

Here, while Woodard acknowledges it dismissed the Prior Suit with prejudice per the Agreement, it argues *res judicata* cannot apply because its current claims involve a breach of the Agreement itself, and the *res judicata* doctrine does not apply to subsequent claims to enforce a settlement agreement after a prior litigation has been dismissed. It relies on *Renny v. Bertoloti*, 252 So. 3d 761 (Fla. 4th DCA 2018), to argue that, because Woodard's current claims seek to enforce the Agreement itself, *res judicata* cannot operate as a bar. There, the court held that a dismissal provision contained in a confidential settlement agreement between the plaintiff and certain defendants did not bar a claim plaintiff had against another defendant, Bertoloti, arising from plaintiff's claim for breach of a proposal for settlement served by Bertoloti and accepted by plaintiff. *Renny*, 252 So. 3d at 764-65. The court concluded that nothing in the confidential settlement agreement precluded plaintiff from accepting Bertoloti's own proposal for settlement where Bertoloti was not a party or intended third party beneficiary to the settlement agreement. *Id.* at 765-66. Here, unlike in *Renny*, Woodard's claims against Sunlord in the instant action are, at least in part, based on pre-Agreement conduct that also formed the basis of the claims Woodard pled against Sunlord in the Prior Suit—claims which Woodard has not only dismissed with

9

prejudice, but also released Sunlord from by virtue of the Agreement's unambiguous release language. Having both dismissed the Prior Suit's claims with prejudice and agreed to broad release language releasing any such claims, Woodard cannot now use the same pre-Agreement conduct it pled in the Prior Suit as a basis for its current claims against Sunlord.

> 4. *The Mergens rule applies because the Prior Suit's claims are based on the same type of alleged fraud and dishonesty as the instant action's claims*.

Woodard's argument that the *Mergens* rule doesn't apply because its Prior Suit did not plead a fraud claim against Sunlord is also meritless. While the Prior Suit did not plead a fraud claim against Sunlord, it did include allegations of fraud and dishonesty. Specifically, Woodard's Prior Complaint pled, among other claims, claims for false description and false designation of origin which alleged, among other things, that Sunlord willfully and falsely attempted to pass Woodard's own products off as its own and willfully and unlawfully used Woodard's trademarks and materials as its own, which actions constituted false representations intended to deceive or cause Woodard's potential customers confusion.

Woodard now attempts to distance itself from these allegations by claiming its Prior Suit was based on the aforementioned conduct while its current claims stem from Sunlord's representations in the Agreement that it had not engaged in the same conduct. In doing so, Woodard seeks to create a distinction without a difference. Regardless of whether it styles its claims as Lanham Act claims, breach of contract claims, or fraud claims, they are based on the same allegations—that Sunlord allegedly improperly used Woodard's trademarks and allegedly copied, marketed, and sold its furniture designs in order to profit at Woodard's expense. While Woodard attempts to disclaim the Prior Suit's allegations as nothing more than "buzzwords" that are not ultimately pled in service of a fraud claim, the conduct alleged in Woodard's Prior Suit is the same conduct that forms the backbone of its fraud claim in the instant action. Indeed, the 11th

Circuit Court of Appeal has made clear that the fraud on which a plaintiff's post-settlement fraud claims are based need not even be the same fraudulent conduct so long as the conduct is of the same type of conduct that also forms the basis of the plaintiff's current fraud claim. *Affiliati Network, Inc. v. Wanamaker*, Case No. 20-10085, 2021 WL 567656, at *3-4 (11th Cir. Feb. 16, 2021). That is exactly the case here.

In opposing Sunlord's Motion, Woodard relies primarily on *Fla. Bar v. Pettie*, 424 So. 2d 734, 737 (Fla. 1982). *Pettie* has nothing to do with the application of the *Mergens* rule. It involved the question of whether participation in a criminal conspiracy to import marijuana violated disciplinary rules prohibiting an attorney from engaging in conduct involving dishonesty. *Pettie*, 424 So. 2d 737. *Pettie* is inapplicable to this case. Here, Woodard seeks to use the same conduct it used to support its claims in the Prior Suit to now support its fraud allegations in the instant action. It asks the Court to conclude that same conduct does not rise to the level of fraud or dishonesty necessary to support the *Mergens* rule's application yet does rise to the level of fraud or dishonesty necessary to support Woodard's pending fraud claim.

5. *Woodard's public policy argument is meritless.*

Woodard asks the Court to deny Sunlord's Motion as a matter of public policy, and claims granting Sunlord's Motion will incentivize parties to participate in dishonest conduct. Sunlord's Motion seeks to do no such thing. Rather, it simply asks the Court to apply Florida's public policy of enforcing settlement agreements whenever possible. *Landan v. Caliber Home Loans, Inc.*, Case No. 0:19-cv-61984-RUIZ/SELTZER, 2019 WL 11505352, at *2 (S.D. Fla. Dec. 16, 2019). Having agreed to be bound by the Agreement's release, Woodard cannot renege on that promise.

**WHEREFORE**, Sunlord respectfully request that this Court enter an order granting Sunlord's Motion and granting such other and further relief as the Court deems just and proper.

Case No. 20-cv-23104-KMW

Date: September 15, 2021                                    Respectfully submitted,

**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
*Counsel for Defendant Sunlord Leisure
Products, Inc.*
201 South Biscayne Boulevard
Citigroup Center, 22nd Floor
Miami, FL 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

By: */s/ Victor Petrescu*
LAWRENCE A. KELLOGG, P.A.
Florida Bar No. 328601
Primary: lak@lklsg.com
Secondary: ah@lklsg.com
VICTOR PETRESCU, ESQ.
Florida Bar No. 0085268
Primary: vp@lklsg.com
Secondary: ah@lklsg.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 15, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Victor Petrescu*
Victor Petrescu, Esq.

Case No. 20-cv-23104-KMW

**SERVICE LIST**

John Cyril Malloy, III, Esq.
Oliver Alan Ruiz, Esq.
Meredith Frank Mendez, Esq.
Jonathan Woodard, Esq.
Malloy & Malloy, P.L.
Email: jcmalloy@malloylaw.com
Email: oruiz@malloylaw.com
Email: mmendez@malloylaw.com
Email: jwoodard@malloylaw.com

Law Offices of Robert F. Reynolds, P.A.
Robert F. Reynolds, Esq.
Email: rreynolds@robertyreynoldspa.com

Conrad & Scherer LLP
William R. Scherer, Esq.
Steven H. Osber, Esq.
Email: wscherer@conradscherer.com
Email: sosber@conradscherer.com
Secondary: wrspleadings@conradscherer.com
Secondary: ekreiling@conradscehrer.com
Secondary: jlira@conradscherer.com

Steve Qi & Associates
Steve Qi, Esq.
Email: steveqi@sqilaw.com