## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-23104-CV-WILLIAMS/TORRES

WOODARD-CM, LLC,

       Plaintiff,

v.

SUNLORD LEISURE PRODUCTS, INC.
d/b/a/ PATIO RENAISSANCE, PRESTIGE
INTERNATIONAL INVESTMENTS CO.,
LTD., ALBERT LORD f/k/a AI PING LUO,
SUNRISE CASUAL FURNITURE, INC.,
MARK GORR, GORR & ASSOCIATES,
INC., JUSTIN PFAHL, and PFAHL
ENTERPRISES, INC.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANTS' MOTION TO DISMISS

      This matter is before the Court on Albert Lord's f/k/a Ai Ping Luo ("Lord") and

Sunrise Casual Furniture, Inc.'s ("Sunrise Casual") Motion to Dismiss [D.E. 73]

Woodard-CM, LLC.'s ("Woodard" or "Plaintiff") First Amended Complaint [D.E. 44]

pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure.

Plaintiff responded to Defendants' motion on May 21, 2021 [D.E. 83] to which

Defendants replied on May 28, 2021 [D.E. 93].[1] Therefore, Defendants' motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendants' Motion should be **DENIED** in all respects.

## I.  PROCEDURAL HISTORY

Plaintiff commenced this action against Sunlord Leisure Products, Inc. d/b/a Patio Renaissance ("Sunlord" or "Patio") on July 27, 2020, for breach of contract and declaratory relief. [D.E. 1]. On August 6, 2020, Plaintiff filed an Expedited Motion for Preliminary Injunction [D.E. 10]. On August 17, 2020, after conducting a hearing on Plaintiff's Motion for Preliminary Injunction on August 13, 2020, and upon the agreement of the parties, the Court entered an Order granting Plaintiff's Motion for Preliminary Injunction. [D.E. 20]. On March 10, 2021, Plaintiff filed a Motion for Leave to Amend the Complaint and Join Parties [D.E. 39], and on April 9, 2021, after receiving approval from the Court, Plaintiff filed its First Amended Complaint [D.E. 44].

In its Amended Complaint, Plaintiff joint seven new defendants to this lawsuit among them the Movants Lord and Sunrise Casual.[2] The Amended Complaint brings seven different claims against Lord: breach of settlement agreement ("Count VII"), tortious interference with contract ("Count VIII"), tortious interference with a

---

[1] The Honorable Judge Kathleen M. Williams referred the Motion to the undersigned on November 22, 2021. [D.E. 137].

[2] The other added defendants are Prestige International Investments Co., Ltd. ("Prestige"), Mark Gorr ("Gorr"), Gorr & Associates, Inc. ("Gorr & Associates"), Justin Pfahl ("Pfahl"), and Pfahl Enterprises, Inc. ("Pfahl Enterprises").

business relationship ("Count IX"), three claims of civil conspiracy ("Counts XXII, XXIII, and XXIV"), and declaratory judgement ("Count XXVI"). *Id*. The Amended Complaint alleges identical causes of action against Sunrise Casual. *Id*.

## II. FACTUAL BACKGROUND

This action relates to a prior lawsuit filed by Plaintiff against Sunlord in this District on July 12, 2019, for trademark infringement and related claims. *See Woodard-CM, LLC v. Sunlord Leisure Products, Inc.* Case 19-cv-22907-CMA (the "First Action"). Plaintiff brought the First Action alleging that Sunlord, a company founded by Defendant Lord in 2004 and one of Plaintiff's direct competitors in the outdoor furniture industry, was intentionally copying Plaintiff's unique furniture designs. [D.E. 44, ¶¶ 54-64].

In August of 2019, Plaintiff and Sunlord entered into a Settlement Agreement whereby Plaintiff agreed to dismiss with prejudice the First Action, which Plaintiff did in September 2019. [D.E. 44-1, 44-3]. The Settlement Agreement required Sunlord to, among other things, forever refrain from directly or indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributers, and independent contractors, to copy, make, import, distribute, offer for sale, or sell the "Enjoined Designs" (as defined in the Settlement Agreement).

Plaintiff alleges that several provisions in that Settlement Agreement give rise to the instant lawsuit [D.E. 44, ¶ 68], including the following provisions, which are referred to herein as among the "Prohibited Activities":

2.1.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never used, and hereby promises not to use, and/or direct or cause any third party, including but not limited to, manufacturers, distributors, and independent contractors to use any corporate name, trade name, trademark, service mark, brand name, collections name, product name, slogan, logo-design, label, packaging, advertisement, price book, description, phase, social media page or domain name incorporating or comprising the Woodard Trademarks, either alone or in combination with any other words, letters, graphical depictions or color combinations, including any and phonetic or foreign equivalents thereof, or any confusingly similar variations thereof, and shall further refrain from using any of Woodard's intellectual property, including collection names, stock numbers, photographs, or other indicia (each and all of the foregoing referred to hereinafter as the "Enjoined Marks"), in connection with furniture or other competing products in the United States and throughout the world.

2.2.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never and shall forever refrain from, directly and indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to copy, maker, import, distribute, offer for sale, or sell the Accused Furniture Designs, the Mallin Furniture Designs (including without limitation those shown in Exhibit A), any substantially similar variations thereof (consistent with legal standards in or interpreting the Copyright Act), and/or any variations thereof that are likely to cause confusion (consistent with legal standards in or interpreting the Lanham Act) with the Mallin Furniture Designs (collectively, the "Enjoined Designs").

3.0.   No Further Advertising or Marketing of the Enjoined Marks and/or Enjoined Designs. As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never, and shall forever refrain from using, licensing, advertising or marketing and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to use, license, advertise or market any of the Enjoined Marks and/or Enjoined Designs, including without limitation, in a printed medium, such as a magazine, newspaper, brochure, price sheet, price book, flyer, leaflet, on signage, billboards, or point of purchase displays, or in internet-based advertising, such as on any web site or social media page under Sunlord's possession, custody or control.

[D.E. 44-1, Sections 2.1, 2.2, and 3].

4

The Amended Complaint alleges that the terms and provisions in the Settlement Agreement are binding and enforceable against Sunlord, as well as against all other defendants in this lawsuit pursuant to section 11.4, which provides in relevant part that, "[t]his Agreement and all terms, provisions, and covenants contained herein are, and shall be, binding upon and shall inure to the benefit of each of the Parties hereto and their parents, subsidiaries, affiliates, related companies, manufacturers, distributors, licensors, licensees, officers, directors, employees, agents, independent contractors, and representatives[.]" [D.E. 44, ¶ 70]. With the Settlement Agreement, the parties also agreed that Plaintiff was the legitimate owner of several marks, including those sold under its Mallin line of outdoor furniture designs (the "Mallin Designs"), which includes the Mallin, Albany, Eclipse, Passage, and Volare designs. [*Id.*, ¶¶ 70-77].

According to the Amended Complaint, in 2020 Plaintiff discovered that Sunlord was intentionally breaching the Settlement Agreement by, among other things, replicating, marketing, advertising, offering for sale, and selling furniture pieces that are replicas of Plaintiff's Mallin Designs (the "Enjoined Designs") to multiple furniture retailers, including retailers in the state of Florida. [*Id.*, ¶¶ 82-90]. Plaintiff alleges that discovery from the parties has revealed communications and written materials reflecting that Defendant Lord, as the founder and Vice-President of Sunlord, has been involved in the company's operational activities, including the manufacturing of furniture and the processing of payments, and has been one of the

driving forces behind Sunlord's intentional breaches of the Settlement Agreement. [*Id.*, ¶¶ 107-115].

Specifically, the Amended Complaint claims that starting in mid-2018, Sunlord and co-Defendants Lord, Prestige, Gorr, Gorr & Associates, Pfahl, Pfahl Enterprises, and Sunrise Casual embarked on a scheme aimed at tortiously interfering with Plaintiff's customers by manufacturing and selling knock off versions of Plaintiff's Mallin Designs. [D.E. 44, ¶¶ 46, 133-138]. Plaintiff cites communications between Lord and Gorr reflecting that Defendants referred to this alleged scheme as the "Mallin Program" and that, as part of this alleged scheme, Lord and his co-Defendants deliberately targeted and solicited Plaintiff's customers. The message below is one of those examples.

> Hello Albert Ginger:
>
> Below you will find the sales history by account for the products they bought from Mallin [Plaintiff]. These are the actual purchase numbers from these dealers for us to determine how we want to run them through our systems.
>
> | | |
> |---|---|
> | Californio Patio: | $[redacted] |
> | All American: | $[redacted] |
> | Yard Art: | $[redacted] |
> | Sunnyland: | $[redacted] |
> | Home & Patio: | $[redacted] |
> | | |
> | Totals: | $[redacted] |
>
> There are other dealers that can be added on a later date but this would be our dealer base to kick off the program.
>
> Thanks,
> Mark
>
> Mark Gorr
> Vice-President of U.S. Operations
> Patio Renaissance
> Sunlord Leisure Products, Inc.
> 9118 7th Street
> Rancho Cucamonga, CA 91730
> 909.980.6998 (Office)
> [redacted] Cell

[D.E. 44, ¶ 135]; *see also* [D.E. 83, p. 13].

To kicking off the program, Defendants acquired samples of Plaintiff's furniture designs, and then began replicating these designs in two different factories—Cong Ty Prestige (in Vietnam) and Dongguan Prestige (in China)—owned by Lord or his immediate family. [*Id.*, ¶¶ 136-149]. Plaintiff claims that Lord personally oversaw and led the production of these replicas in Asia. [*Id.*, ¶¶ 114, 360].[3]

Once the replicas were ready, Lord and his co-Defendants began promoting the Enjoined Designs with furniture retailers, including with some of Plaintiff's customers. [*Id.*, ¶¶ 149-157]. For example, in June 2019 Defendant Gorr wrote an email to Chair King, about Lord's involvement in the production of replicas of furniture models that Chair King previously bought from Plaintiff. The email contained a tear sheet and price list for the "Edinburgh" and "Scandia" collections, which are two of the Enjoined Designs that replicate models within Plaintiff's Mallin Collection. *Id.* On another occasion, Defendants Gorr and Lord wrote to Fortunoff Backyard Store, another of Plaintiff's customers. That communication likewise contained pricing and tear sheets for replicas of designs that Fortunoff previously bought from Plaintiff, and statements from Lord highlighting that the replicas' prices

---

[3] Plaintiff will rely on evidence in the record showing that in connection with the production of the replicas, Defendant Pfahl, Sunlord's Florida-based subcontractor [D.E. 44, ¶¶ 18, 27, 337], sent an email to Lord relaying product specifications and details about Plaintiff's Mallin Designs that Lord needed to start the manufacturing process. In his email, Pfahl attached a spreadsheet with the file name "Mallin Model Dimension by R & D". *See* [D.E. 83, p. 13].

were 5 to 15% cheaper than Plaintiff's original designs and noting that Lord was open to negotiating if the volume was good. *Id*.

Defendants also advertised, marketed, and offered to sale the Enjoined Designs at an annual furniture retail show in Chicago in September of 2019. [D.E. 44, ¶¶ 158-161]. In order to advertise the replicas, Pfahl, who attended the show along with Lord and Gorr, confirmed in writing that he needed the tear sheets in order to show furniture retailers a file folder of the "[Mallin] program." *Id*.

According to the Amended Complaint, around the same time that Sunlord and Plaintiff executed the Settlement Agreement that dismissed the First Action, Lord and the other members of the scheme attempted to conceal their unlawful activity by using shell entities to reroute incoming payments for the sale of the Enjoined Designs. [*Id.*, ¶¶ 165-177]. Defendant Sunrise Casual, a Californian corporation owned by Lord and formed less than two months after the Settlement Agreement was executed, was one of those entities. *Id*. In connection with these allegations, Plaintiff cites communications between Defendants involving efforts to make sure that retailers stopped using Sunlord's trade name as the distributor of the Enjoined Designs. *Id*. In one of those emails, Lord instructed Gorr and a Sunlord salesperson to have a retailer re-issue a purchase order made payable to Sunrise Garden to break the links between the sale of the Enjoined Designs and Sunlord. [*Id.*, ¶ 172]. Plaintiff claims that Lord is the sole owner of Sunrise Casual and cites to a written receipt indicating that payments to Sunrise Casual were sent to Sunlord's address in Rancho Cucamonga, California. [*Id.*, ¶¶ 172-177].

The Amended Complaint further alleges that the defendants have engaged in prohibited activities in breach of the Settlement Agreement and have committed tortious acts within the state of Florida. Plaintiff claims that Defendants Sunlord and Prestige operate the websites www.patiorenaissance.net and patiorenaissance.com, which advertise and market Sunlord's furniture products to Florida customers. [D.E. 44, ¶¶ 18-28]. In addition, Sunlord contracts with Florida-based salesperson Pfahl, who is dedicated to the Florida market, and has received payments from Florida-based retailers for the purchase of furniture designs, including the Enjoined Designs at issue in this action. *Id.* Plaintiff claims that Lord, in his role as founder, Chairman, and Vice-President of Sunlord [D.E. 44, ¶¶ 18, 27, 107-110, 337], traveled to Florida in March 2020 to meet with Defendants Pfahl and Gorr, as well as with local furniture retailers and business owners. [D.E. 44, ¶ 33-34]. Plaintiff cites to electronic communications between Lord and Defendant Pfahl discussing Lord's meeting with Plaintiff's customer Zing Patio in Florida—a meeting that Pfahl attended—and reflecting Lord's involvement in the sale and shipment of furniture items pertaining to the Enjoined Designs to Zing Patio. [D.E. 44, ¶ 34].

Based on these facts, Plaintiff argues that this Court may properly exercise both general and specific jurisdiction over Defendants Lord and Sunrise Casual pursuant to Florida's long-arm statute, Sections 48.193(1)(a)(1), 48.193(1)(a)(2), and 48.193(2), as well as under a theory of conspiracy. [D.E. 44, ¶ 14; D.E. 83, pp. 8-15]. Because the Court finds that Plaintiff has alleged sufficient facts to support a *prima facie* showing of jurisdiction under the tort section of the Florida's long-arm statue,

Section 48.193(1)(a)(2), the Court does not rule on any of Plaintiff's alternative theories for jurisdiction.[4]

### III.   ANALYSIS

#### A.   *Applicable Principles*

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). As such, to defeat a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff "must establish a *prima facie* case of personal jurisdiction over a nonresident defendant by presenting enough evidence to withstand a motion for directed verdict." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

---

[4] The Court notes that given the factual allegations in the Amended Complaint, a prima facie finding of jurisdiction over non-signatories Lord and Sunrise Casual may be justified under section 48.193(1)(a)(7) for breach of the Settlement Agreement entered into by Sunlord. The terms of the Settlement Agreement expressly applied to Sunlord's affiliates, related companies, officers, directors, employees, and independent contractors. [D.E. 44-1, Section 11.4]. Furthermore, Plaintiff alleges, and Defendants do not dispute, that at all times relevant to this lawsuit, Lord has acted as Sunlord's Vice-President [D.E. 44, ¶ 107], and that Sunrise Casual and Sunlord are related companies. [*Id.*, ¶ 177]. Further, the Settlement Agreement required covered parties to "forever refrain" from engaging in Prohibited Activity worldwide, including in Florida. *See Branch v. Ottinger*, 477 F. App'x 718, 720 (11th Cir. 2012) ("traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.") (citation and quotations omitted).

When a defendant challenges jurisdiction and submits an affidavit as supporting evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction," *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002), as long as the affidavit contains "specific factual declarations within the affiant's personal knowledge." *Mosseri*, 736 F.3d at 1351. If a defendant's affidavit only contains conclusory assertions, the burden does not shift. *See Mosseri*, 736 F.3d at 1351.

When a defendant satisfies its burden, the plaintiff, in order to justify the exercise of jurisdiction, must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986). To the extent that defendant's affidavit does not contradict plaintiff's pleadings, "we accept the allegations stated in the complaint as true for purposes of resolving the jurisdictional issue." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). And "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier*, 288 F.3d at 1269 (citing *Madara*, 916 F.2d at 1514).

Moreover, "[t]he determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara*, 916 F.2d at 1514 (citations omitted). First, there must be a basis for jurisdiction under Florida's long-arm statute. *See id.* (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d

829, 919 (11th Cir. 1990)). Second, exercising personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment so "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

### B.   *Sufficiency of Lord's Affidavit*

As a preliminary matter, the Court finds that Lord's affidavit [D.E. 73-1] does not sufficiently challenge the jurisdictional allegations in the Amended Complaint to shift back to the Plaintiff the burden of persuasion. *See Posner v. Essex Ins. Co.*, 178 F.3d at 1215 (holding that Defendant's affidavit did not trigger a duty for Plaintiffs to respond with additional evidence supporting jurisdiction); *Mosseri*, 736 F.3d at 1351 (finding it questionable whether Defendant's conclusory affidavit shifted the burden back to Plaintiff at all).

Defendants argue that Lord's affidavit directly addressed and rebutted Woodard's jurisdictional allegations [D.E. 93, p. 3]. The Court disagrees. Lord's affidavit not only does not rebut, but it also fails to even address most of the serious allegations put forth by Plaintiff. Among other things, the Amended Complaint claims that Lord, as founder and Vice President of Sunlord, was the driving force behind a scheme to manufacture and sell replicas of Plaintiff's furniture designs— and to interfere with Plaintiff's business relations, including in Florida [D.E. 44, ¶¶ 71, 107, 114, 135]. Plaintiff asserts that Lord colluded with Gorr and Florida-based Pfahl to execute the scheme [D.E. 44, ¶ 357], and that as part of it, Lord and his co-

Defendants used factories owned by Lord or his immediate family in China and Vietnam to manufacture the replicas [D.E. 44, ¶¶ 135-146]. Plaintiff alleges that Lord and co-Defendant Gorr deliberately targeted and solicited Plaintiff's customers, offering to sale replicas of Plaintiff's designs to some of these customers at lower prices [*id.*, ¶¶ 147-154], and that in furtherance of the scheme Lord traveled to Florida in 2020 to meet with multiple furniture retailers, including Plaintiff's customer Zing Furniture [*id.*, ¶¶ 33-34]. Plaintiff also claims that Lord was involved in the sale and shipment of furniture items pertaining to the Enjoined Designs, to Zing Furniture in Florida [*id.* ¶¶ 113, 133, 189; D.E. 83, pp. 2, 7], and that Lord and his co-Defendants used shell companies owned by Lord or his immediate family to hide payments deriving from the sale of these Enjoined Designs [*id.*, ¶¶ 20, 165-177].

On the other hand, Lord spends half of his page-and-a-half-long affidavit offering general statements about facts that Plaintiff never contested, and the remainder of his affidavit, instead of denying or rebutting Plaintiff's jurisdictional claims, simply glosses over most of these allegations. *See* [D.E. 73-1]. At most, the affidavit tries to disguise the commercial nature of his business meetings in Florida by calling them "meet-and-greet" encounters [*id.*, ¶ 9], and highlights that the sole purpose of these meetings "was to benefit Sunlord Leisure Products, Inc. and Prestige International Investments." [*Id.*, ¶ 10]. Notably, Lord's affidavit concedes that he traveled to Florida in March 2020 to meet with Florida retailers [*id.*, ¶ 9]. It also concedes that one of those retailers was Zing Furniture, for whom Lord "investigated a warranty claim with cushions." *Id*. Lord, however, does not deny that these cushions

were cushions associated with Sunlord's Aberdeen collection, a replica of Plaintiff's Albany collection and one of the Enjoined Designs [D.E. 44, ¶ 149]; that the Aberdeen replicas were, in fact, sold to Zing Furniture [D.E. 44, ¶¶ 33-34]; or that Zing Furniture is one of Plaintiff's customers. [D.E. 44, ¶¶ 34; D.E. 83, p. 7].

Accordingly, given that Lord's affidavit does not sufficiently controvert the jurisdictional allegations made in the Amended Complaint, the Court finds his affidavit to be "of little significance to the jurisdictional question" at hand. *See Posner*, 178 F.3d at 1215; *see, e.g.*, *Adam J. Rubinstein, M.D., P.A. v. Ourian*, No. 20-21948-CIV, 2020 WL 6591559, at *4 (S.D. Fla. Nov. 10, 2020) (denying motion to dismiss for lack of personal jurisdiction where Defendant's affidavit did not deny plaintiff's jurisdictional facts). Defendants' motion should be denied on this basis.

### C.   *The Florida Long-Arm Statute*

#### (i)   **Tortious Interference**

Woodard invokes specific jurisdiction under the "tortious act within Florida" provision of Florida's long-arm statute, section 48.193(1)(a)(2). *See* Fla. Stat. § 48.193(1)(a)(2). Section 48.193(1)(a)(2) allows for the exercise of jurisdiction over a non-resident defendant who commits a tortious act within Florida. *See id*. However, "a defendant's physical presence is not necessary to commit a tortious act in Florida." *See Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Instead, a nonresident defendant can commit a tortious act in Florida under section 48.193(1)(a)(2) by directing "telephonic, electronic, or written communications into Florida," so long as the tort alleged arises from such communications. *See Internet*

14

*Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010); *Wendt*, 822 So. 2d at 1253. Furthermore, "[a]ccording to precedent binding [in the Eleventh Circuit,] subsection [(1)(a)(2)] extends long-arm jurisdiction over defendants who commit a tort that results in injury in Florida." *Posner*, 178 F.3d at 1219; *see also Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008).

Plaintiff has articulated sufficient factual allegations of tortious interference in the Amended Complaint to support a finding of jurisdiction under § 48.193(1)(a)(2) for tortious interference against Lord. Under Florida law, the elements of a claim of tortious interference with an advantageous business relationship are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 194 F. App'x. 591, 603 (11th Cir. 2006) (per curiam) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)); *see also Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1343 (M.D. Fla. 2006).

Even though some of the tortious acts alleged in the Amended Complaint did not take place in Florida, Lord is still subject to Florida's long-arm statute because his acts caused an injury in Florida. In *Posner v. Essex*, the Eleventh Circuit held that a nonresident defendant accused of engaging in tortious interference acts outside the state committed a "tortious act within Florida" because its actions caused an injury within the State. *Posner*, 178 F.3d at 1216-17 (finding that unrebutted allegation in

the complaint suggesting that nonresident defendant's tortious interference caused injury within the state were sufficient to invoke jurisdiction under the long-arm statute). This precedent was reaffirmed in *Licciardello v. Lovelady*, where the Eleventh Circuit held that the unauthorized use of plaintiff's trademark on a website, which had been created in Tennessee by a Tennessee resident, caused an injury in Florida by virtue of being accessible in Florida. *Lovelady*, 544 F.3d at 1283 ("We have held that § 48.193(b) of the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state."). Similarly, in *Louis Vuitton v. Mosseri*, the Eleventh Circuit found that a nonresident defendant who acted on behalf of his company and never even set foot in Florida was subject to jurisdiction under § 48.193(1)(a)(2) for trademark infringement because (i) his company's website, which marketed the infringing goods, was accessible in Florida, and (ii) the company, in fact, sold the infringing goods to Florida customers. *Mosseri*, 736 F.3d at 1354 ("[A] nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*.") (second alteration and emphasis in original) (quoting *Lovelady*, 544 F.3d at 1283).

Plaintiff has satisfied Florida's long-arm statute because, much as in *Mosseri*, here the Amended Complaint makes unrebutted allegations, supported by evidence, that Sunlord's websites market and advertise infringing furniture designs directly to Florida customers [D.E. 44, ¶¶ 25-26], and that such items are not only accessible in Florida but are also sold in at least thirty retail stores across the State. [D.E. 44, ¶17].

16

Plaintiff asserts that Lord, as founder, Chairman, and Vice-President of Sunlord, led a scheme to manufacture and sell copies of Plaintiff's Mallin furniture designs and interfere with its business relations [D.E. 44, ¶¶ 71, 107, 114, 135], and that as part of this scheme, Lord targeted and solicitated Plaintiff's customers. [*Id.*, ¶¶ 147-154]. Plaintiff alleges that these replicas were manufactured at Lord's direction in factories in China and Vietnam owned by Lord or his family [*id.*, ¶¶ 139-146], and that Sunlord has sold replicas of Plaintiff's designs to Florida retailers, including to Plaintiff's costumer Zing Patio, diverting sales from Plaintiff. [*Id.*, ¶¶ 20, 33-34, 200]. Plaintiff also alleges that Lord traveled to Florida to have in-person meetings with multiple furniture retailers, including Zing Patio [*id.*, ¶¶ 33-34], and that Lord was involved in the sale and shipment of infringing furniture items to Zing Patio in Florida. [D.E. 44, ¶¶ 113, 133, 189].[5]

Lord submitted an affidavit in support of Defendants' Motion to Dismiss, but that affidavit does not rebut, or even deny, any of these allegations.  The affidavit is thus not legally persuasive. *See Bluegreen Vacations Unlimited, Inc. v. Timeshare Laws. P.A.*, No. 20-24681-CIV, 2021 WL 3552175, at *4 (S.D. Fla. Aug. 11, 2021) (exercising jurisdiction under Section 48.193(1)(a)(2) for tortious interference where Defendants' affidavits were consistent with the general allegations in the complaint); *XN Fin. Servs., Inc. v. Conroy*, No. 12-80143-CIV, 2012 WL 12873512, at *4 (S.D. Fla. Mar. 5, 2012) (finding a prima facie basis to exercise jurisdiction for tortious

---

[5] Plaintiff will rely on evidence in the record, including email communications and commercial invoices, reflecting that Defendants Lord and Pfahl were involved in the sale and shipment of Enjoined Designs to one of Plaintiff's customers in Florida, and that payments were to be made to Defendant Sunrise Casual. *See* [D.E. 83, pp. 7, 14].

interference where the affidavit submitted on behalf of defendants did nothing to refute plaintiff's jurisdictional allegations).

Defendants nevertheless allege that Plaintiff's § 48.193(1)(a)(2) argument fails because Plaintiff cannot show the connection between Lord's contacts in Florida and Plaintiff's claims. [D.E. 93, p. 5]. This argument is also unpersuasive. As detailed above, Woodard's tortious interference claim arises out of conduct that includes, among other things, Lord's electronic communications with Florida-based salesperson Pfahl, the sale of Sunlord's replicas to Florida retailers, including to Plaintiff's customer, and Lord's visit to the State and his dealings with Zing Patio in Florida. By Defendants' own admissions, Lord's activities in Florida "were directed at residents of Florida on behalf of Sunlord[,]" [D.E. 73, p.8], and whatever gains emerged from these activities were for the "benefit of [Sunlord] and [Prestige]." [D.E. 73-1, ¶ 10]. *See Bluegreen Vacations Unlimited, Inc. v. Montgomery L. Firm, LLC*, No. 19-CV-24704, 2020 WL 12182223, at *4 (S.D. Fla. Nov. 30, 2020) (finding tortious interference where Defendants' activities were "directed at consumers in Florida"); *Commodores Ent. Corp. v. McClary*, No. 6:14-CV-1335-ORL-37, 2015 WL 1242818, at *2 (M.D. Fla. Mar. 18, 2015) ("[I]njury by interference with economic activities is deemed to have occurred in Florida when misrepresentations or solicitations to a plaintiff's customers and competitors are received in Florida."); *Blueskygreenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, No. 12-81234-CIV, 2014 WL 1341277, at *4 (S.D. Fla. Apr. 4, 2014) (holding that tortious interference arose in part from electronic communications sent into the State). Taking all uncontroverted

facts as true, and making all reasonable inferences in favor of Plaintiff, *see Meier*, 288 F.3d at 1269, the Court finds that Woodard has sufficiently pled a tortious interference claim.

### (ii)   Civil Conspiracy to Interfere with Business Relations

The Court also finds that Woodard has sufficiently alleged the existence of a conspiracy and has articulated specific actions attributable to Lord, Sunrise Casual and other co-Defendants in furtherance of that alleged conspiracy. Hence, the Court may properly exercise jurisdiction over both Lord and Sunrise Casual under Section 48.193(1)(a)(2) on this basis.

To state a claim for civil conspiracy under Florida law, Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Mazer*, 556 F.3d at 1271 (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)); *see Witmer v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering*, 631 So. 2d 338, 342 (Fla. 4th DCA 1994) (observing that an "[a]greement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act"); *Nicholson v. Kellin*, 481 So. 2d 931, 935 (Fla. 5th DCA 1985) (stating that "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose by unlawful means"). Each coconspirator need not act to further a conspiracy;

each "need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (also stating that "[t]he existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence"); *see also Nicholson*, 481 So. 2d at 935 (confirming that an act done in pursuit of a conspiracy by one conspirator is an act for which each other conspirator is jointly and severally liable).

In its Amended Complaint, Woodard alleges that in mid-2018 Sunlord and the other defendants in this suit engaged in a scheme to tortiously interfere with Plaintiff's customers, and infringe upon Plaintiff's rights by manufacturing, importing, marketing, and selling various knock off versions of Plaintiff's Mallin furniture designs. Plaintiff cites to electronic communications evidencing that defendants expressly referred to this scheme as the "Mallin program" or "Mallin project" and discussing the specific steps Defendants took to kick off and execute the scheme, including replicating Plaintiff's designs in foreign factories; targeting Plaintiff's customers and offering the replicas at lower prices; selling the replicas to Florida furniture retailers through a Florida-based sales representative; and using shell companies, including defendant Sunrise Casual, to hide payments derived from the sale of these Enjoined Designs [D.E. 44, ¶¶ 18-20, 27, 33-34, 135, 139-146, 150-154, 173-177].

Plaintiff also claims that several overt acts in furtherance of the conspiracy took place in Florida. As detailed above Plaintiff claims that, in furtherance of this

scheme, Lord travel to Florida in March 2020 to meet with Defendants Gorr and Pfahl, and to have in-person meetings with several local furniture retailers, including Plaintiff's customer Zing Patio; that Sunlord sold its Aberdeen replicas to Zing Patio; and that Lord and Pfahl were involved in the sale and shipment of furniture items pertaining to the Enjoined Designs to Zing Patio in Florida [D.E. 44, ¶¶ 33-34; D.E. 83, pp. 1, 7, 13].[6]

Plaintiff alleges that Lord used shell entities, owned by Lord or his family, including Defendant Sunrise Casual, to hide payments derived from the sale of the Enjoined Designs. [D.E. 44, ¶¶ 165-177, 366]. Plaintiff cites to email communications where Lord gave out instructions to have retailers name Sunrise Garden and not Sunlord as the distributor of the Enjoined Designs and to re-issue purchase orders made payable to Sunrise [D.E. 44, ¶¶ 168-172]. Lord himself admitted that he received payments through Sunrise Casual for the sale of Sunlord's furniture items [D.E. 83-3, p.22].

Finally, Plaintiff alleges that its goodwill and reputation have been harmed. Plaintiff also claims economic injury as a result of the alleged conspiracy in the form of diverted sales. [D.E. 44, ¶ 257]. Accordingly, Plaintiff has sufficiently alleged the existence of a conspiracy, articulating specific actions attributable to Lord and

---

[6] Plaintiff will rely on evidence in the record showing that Florida-based Defendant Pfahl shared with Lord product specifications of Plaintiff's designs needed to start manufacturing the replicas; that Defendant Gorr instructed Pfahl in Florida to update his price list "for the Mallin project" with new price lists relating to Plaintiff's Mallin Designs; that Pfahl distributed promotional materials for the Enjoined Designs to retailers in Florida; that Lord and Pfahl were involved in the sale and shipment of Enjoined Designs to Zing Patio in Florida, and that Sunrise was the shipper of those items. [D.E. 83, pp. 7, 13, 14].

Sunrise Casual in furtherance of the alleged scheme. Based on these allegations, the Court may properly exercise jurisdiction over Lord and Sunrise Casual under Section 48.193(1)(a)(2) on this basis. *See Mazer*, 556 F.3d at 1281-82 ("Florida courts have held that the state's long-arm statute can support personal jurisdiction over any alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida.").

### D. *Due Process Analysis*

Plaintiff has established that exercising jurisdiction over Lord and Sunrise Casual under Section 48.193(1)(a)(2) of the long-arm statute comports with due process. To determine whether exercising specific personal jurisdiction complies with due process, courts examine: "(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Mosseri*, 736 F.3d at 1355 (internal quotations and citation omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.*

### (i)      Minimum Contacts

As detailed above, Plaintiff alleges that its tortious interference claim arises from Defendants' actions directed at Florida, including (1) Sunlord's sale of Enjoined Designs to Florida consumers through its websites; (2) Lord's conspiracy with co-Defendant and Florida-based Pfahl to manufacture and sell replicas of Plaintiff's Mallin designs, including to Florida furniture retailers; (3) Lord's visit to Florida and his in-person meetings with furniture retailers, including Plaintiff's customer Zing Patio; (4) Lord's direct involvement in the sale and shipment of infringing furniture items to Zing Patio in Florida; and (5) Lord's use of Sunrise Casual to hide payments deriving from the sale of the Enjoined Designs, including sales to Zing Patio in Florida. [D.E. 44, ¶¶ 33-34, 135, 139-146, 150-154, 173-177; D.E. 83, pp. 1-2, 7, 13]. Viewed collectively, Defendants' contacts with Florida are related to Plaintiff's claim, involve Defendants' purposeful availment of the benefits of conducting business in the State, and should lead Defendants to reasonably expect being haled into Florida courts as a result of these contacts. *See Mosseri*, 736 F.3d at 1357; *XN Fin. Servs., Inc. v. Conroy*, No. 12-80143-CIV, 2012 WL 12873512, at *5 (S.D. Fla. Mar. 5, 2012).

Defendants' contacts with Florida also satisfy the purposeful availment prong under the "effects test" that courts in this Circuit apply in the context of intentional torts. *See Lovelady*, 544 F.3d at 1285; *Mosseri*, 736 F.3d at 1356. Under the "effects test," the nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Lovelady*, 544 F.3d at 1286. Here, Plaintiff

alleges that Lord knowingly and willfully initiated the Mallin Program scheme to unlawfully target Woodard's customers. As part of this scheme, Lord worked with and communicated with Florida-based Pfahl, and traveled to Florida to meet with furniture retailers, including one of Plaintiff's customers. Lord was also involved in the sale and shipment of the Enjoined Designs to Zing Patio in Florida. By Defendant's own admission, Lord's activities in Florida "were directed at residents of Florida on behalf of Sunlord[,]" [D.E. 73, p.8], and whatever gains emerged from these activities were for the "benefit of [Sunlord] and [Prestige]." [D.E. 73-1, ¶10]. Accordingly, Defendants' contacts with Florida meet the "effects test." *See Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1560 (S.D. Fla. 1996) (finding that commercial efforts including trips into the State, as well as correspondence and phone calls to personnel in Florida amounted to purposeful availment); *Wyndham Vacation Ownership, Inc. v. Montgomery L. Firm, LLC*, 2019 WL 5394186, at *6 (M.D. Fla. Aug. 8, 2019) (holding that "effects test" was met where Defendants arranged in-person meetings in Florida, solicited Florida customers, and worked with a Florida-based co-defendant).

**(ii)    Traditional Notions of Fair Play and Substantial Justice**

The Court also finds that exercising personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice. The Court considers (1) the burdens on defendants, (2) Florida's interest in adjudicating the controversy, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the efficient resolution of controversies,

and (5) the shared interest of the states in furthering fundamental substantive social policies. *Meier*, 288 F.3d at 1276.

Defendants assert that exercising person jurisdiction over Lord, a California resident, would run afoul of traditional notions of fair play and substantial justice because litigating here would pose a substantial financial burden on him [D.E. 93, p. 9]. However, Lord "has not offered any evidence of his finances or any other limitations on him to show that he would be burdened by having to litigate this case in Florida." *See Mosseri*, 736 F.3d at 1358; *see also Naam Produce, Inc. v. Mascar*, 2015 WL 3939238, at \*4 (S.D. Fla. June 26, 2015) (rejecting financial burden argument where resident of Hawaii failed to produce persuasive evidence that he would be burdened by having to litigate case in Florida). Here, Lord has failed to provide any evidence, through affidavit or otherwise, suggesting that litigating in this District would be burdensome for him. Further, the state of Florida has an interest in adjudicating a case involving the sale of knock-off furniture items to Florida customers, particularly when the facts of the case are related to prior litigation and a Settlement Agreement in this District, as well as to a Preliminary Injunction previously issued by this Court [D.E. 20]. *See Mosseri*, 736 F.3d at 1358 ("The judiciary has an interest in efficiently resolving the dispute in the forum where an extensive record was established and the case was long pending").

### E.    *Corporate Shield Doctrine Does Not Alter the Analysis*

Defendants argue, however, that even if this Court finds that Lord's tortious actions provide a basis to exercise jurisdiction over him under the long-arm statute,

the exercise of jurisdiction is precluded because Lord's acts were carried out in his capacity as an agent of Sunlord and, as such, he is immune to jurisdiction pursuant the corporate shield doctrine. [D.E. 73, p. 7; D.E. 93, p.7]. The Court disagrees with Defendants' assertion that, at the current pleading stage of the case, their corporate shield defense precludes the exercise of jurisdiction.

It is true that under Florida law, the corporate shield doctrine creates a "distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation." *Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993). This corporate shield protection, however, "is inapplicable where the corporate officer commits intentional torts." *Mosseri*, 736 F.3d at 1355 (citing *Doe v. Thompson*, 620 So. 2d at 1006 n.1).

Because Woodard alleges that Lord engaged in acts that amounted to an intentional tort, the corporate shield doctrine does not apply. *See TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-CV-23066, 2014 WL 11899285, at *3 (S.D. Fla. July 15, 2014) (finding that defendant cannot defeat person jurisdiction based on the corporate shield when committed an intentional tort); *XN Fin. Servs., Inc. v. Conroy*, No. 12-80143-CIV, 2012 WL 12873512, at *6 (S.D. Fla. Mar. 5, 2012) ("Because [Defendants] allegedly committed an intentional tort, they are not entitled to the corporate shield defense."); *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP*, No. 6:19-CV-1908-WWB-EJK, 2021 WL 4948102, at *3 (M.D. Fla. July 6, 2021) ("[B]ecause the Amended Complaint specifically alleges that

[Defendants] . . . participated in the commission of intentional torts, the corporate shield doctrine does not apply").

### F.   *Admissibility of Plaintiff's Exhibits*

Finally, Defendants raise evidentiary challenges to the jurisdictional analysis. Defendants contend that some of the exhibits that Plaintiff attached to its response [D.E. 83.1] are inadmissible because they are irrelevant or hearsay. [D.E. 93, p.5]. However, email communications including Lord, Gorr, and Florida-based salesperson Pfahl, involving the sale of "Aberdeen" items (one of the Enjoined Designs) to Zing Patio (one of Plaintiff's customers in Florida), and referencing the involvement of Sunrise (the alleged shell company used to hide payments) are relevant to several aspects of Plaintiff's case. [D.E. 83-1, Composite Exhibit 4]; *see also Adelman v. Boy Scouts of Am.*, 276 F.R.D. 681, 688 (S.D. Fla. 2011) ("Information is **relevant** if it is 'germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible **evidence**'" (emphasis in original) (quoting *Donahay v. Palm Beach Tours & Transportation, Inc.*, 242 F.R.D. 685, 687 (S.D.Fla.2007); *ICE Portal, Inc. v. VFM Leonardo, Inc.*, No. 09-60230-CIV, 2010 WL 11505243, at *1 (S.D. Fla. Feb. 2, 2010) ("Under Rule 401, evidence is relevant if it tends to make more or less probable the existence of a fact.").

Defendant's hearsay objection fails. Defendants cite an Eleventh Circuit case to illustrate that the court should decline to consider exhibits attached to plaintiff's response because the exhibits were deemed inadmissible hearsay. *United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009). However, this case is distinguishable.

First, in *Mazer*, the Court determined that none of the exceptions to hearsay applied to the exhibits at issue. *See id.* at 1279. By contrast, Defendants do not cite any authority, nor do they make any arguments demonstrating that Woodard's exhibits are, in fact, hearsay to which none of the hearsay exceptions apply. *See* [D.E. 93, pp. 4-5]; *In re: Chiquita Brands Int'l Inc.*, No. 07-60821-CIV, 2019 WL 11497632, at *14 (S.D. Fla. Sept. 5, 2019) ("[H]earsay may be reducible to admissible form through the anticipated testimony of a known witness who has personal knowledge of the substantive content of the matter.").

Second, the defendant's affidavit in *Mazer* articulated "specific factual denials that challenged *each and every* factual allegation raised by [plaintiff] regarding [defendant's] conduct in Florida[.]" *Mazer*, 556 F.3d at 1277 (emphasis added). Accordingly, the *Mazer* court found that the affidavit triggered a duty for plaintiff to respond with additional evidence supporting jurisdiction. As discussed above, Lord's affidavit does not offer anything that resembles the level of direct and specific denials articulated in the *Mazer* affidavit. *See id*. In short, the Court is not persuaded by Defendants' inadmissibility claims.[7]

## IV.   CONCLUSION

For the reasons stated herein, we **RECOMMEND** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction be **DENIED.**

---

[7] Defendants styled their motion to dismiss as a 12(b)(2) and 12(b)(3) motion, but Defendants' brief failed to offer any arguments or cite any authority in support of their improper venue theory. Accordingly, the Court will not address that point. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir.1995) ("a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.").

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to order the parties to have **seven (7) days** from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Accordingly, written objections are due by **February 17, 2022**. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND ORDERED** in Chambers at Miami, Florida this 10th day of February, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge