# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-23104-CV-WILLIAMS/TORRES

WOODARD-CM, LLC,

       Plaintiff,

v.

SUNLORD LEISURE PRODUCTS, INC.
d/b/a/ PATIO RENAISSANCE, PRESTIGE
INTERNATIONAL INVESTMENTS CO.,
LTD., ALBERT LORD f/k/a AI PING LUO,
SUNRISE CASUAL FURNITURE, INC.,
MARK GORR, GORR & ASSOCIATES,
INC., JUSTIN PFAHL, and PFAHL
ENTERPRISES, INC.,

       Defendants.

_____/

# REPORT AND RECOMMENDATION
# ON DEFENDANTS' MOTION TO DISMISS

       This matter is before the Court on Justin Pfahl ("Pfahl") and Pfahl Enterprises,

Inc. ("Pfahl Enterprises") Motion to Dismiss [D.E. 79] Woodard-CM, LLC.'s

("Woodard" or "Plaintiff") First Amended Complaint [D.E. 44] pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff responded to Defendants'

motion on May 27, 2021 [D.E. 91] to which Defendants replied on June 17, 2021 [D.E.

112].[1] Therefore, Defendants' motion is now ripe for disposition. After careful

---

[1] The Honorable Judge Kathleen M. Williams referred the Motion to the undersigned
on November 22, 2021. [D.E. 137].

consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendants' Motion should be **GRANTED in part** and **DENIED in part**.

## I.   PROCEDURAL HISTORY

Plaintiff commenced this action against Sunlord Leisure Products, Inc. d/b/a Patio Renaissance ("Sunlord" or "Patio") on July 27, 2020, for breach of contract and declaratory relief. [D.E. 1]. On August 6, 2020, Plaintiff filed an Expedited Motion for Preliminary Injunction [D.E. 10]. On August 17, 2020, after conducting a hearing on Plaintiff's Motion for Preliminary Injunction on August 13, 2020, and upon the agreement of the parties, the Court entered an Order granting Plaintiff's Motion for Preliminary Injunction. [D.E. 20]. On March 10, 2021, Plaintiff filed a Motion for Leave to Amend the Complaint and Join Parties [D.E. 39], and on April 9, 2021, after receiving approval from the Court, Plaintiff filed its First Amended Complaint [D.E. 44].

In its Amended Complaint, Plaintiff joint seven new defendants to this lawsuit among them the Movants Pfahl and Pfahl Enterprises.[2] The Amended Complaint brings seven different claims against Pfahl: breach of settlement agreement ("Count XIX"), tortious interference with contract ("Count XX"), tortious interference with a business relationship ("Count XXI"), three claims of civil conspiracy ("Counts XXII,

---

[2] The other added defendants are Albert Lord a/k/a Ai Ping Luo ("Lord"), Sunrise Casual Furniture, Inc. ("Sunrise Casual"), Prestige International Investments Co., Ltd. ("Prestige"), Mark Gorr ("Gorr"), Gorr & Associates, Inc. ("Gorr & Associates").

XXIII, and XXIV"), and declaratory judgement ("Count XXVI"). *Id*. The Amended Complaint alleges identical causes of action against Pfahl Enterprises. *Id*.

## II.    BACKGROUND

This action relates to a prior lawsuit filed by Plaintiff against Sunlord in this District on July 12, 2019, for trademark infringement and related claims. *See Woodard-CM, LLC v. Sunlord Leisure Products, Inc.* Case 19-cv-22907-CMA (the "First Action"). Plaintiff brought the First Action alleging that Sunlord, a company founded by Defendant Lord in 2004 and one of Plaintiff's direct competitors in the outdoor furniture industry, was intentionally copying Plaintiff's unique furniture designs. [D.E. 44, ¶¶ 54-64].

In August of 2019, Plaintiff and Sunlord entered into a Settlement Agreement whereby Plaintiff agreed to dismiss with prejudice the First Action, which Plaintiff did in September 2019. [D.E. 44-1, 44-3]. The Settlement Agreement required Sunlord to, among other things, forever refrain from directly or indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributers, and independent contractors, to copy, make, import, distribute, offer for sale, or sell the "Enjoined Designs" (as defined in the Settlement Agreement).

Plaintiff alleges that several provisions in that Settlement Agreement give rise to the instant lawsuit [D.E. 44, ¶ 68], including the following provisions, which are referred to herein as among the "Prohibited Activities":

2.1.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never used, and hereby promises not to use, and/or direct or cause any third party, including but not limited to, manufacturers, distributors, and independent contractors to use any corporate name, trade name, trademark, service mark, brand name, collections name, product name, slogan, logo-design, label, packaging, advertisement, price book, description, phase, social media page or domain name incorporating or comprising the Woodard Trademarks, either alone or in combination with any other words, letters, graphical depictions or color combinations, including any and phonetic or foreign equivalents thereof, or any confusingly similar variations thereof, and shall further refrain from using any of Woodard's intellectual property, including collection names, stock numbers, photographs, or other indicia (each and all of the foregoing referred to hereinafter as the "Enjoined Marks"), in connection with furniture or other competing products in the United States and throughout the world.

2.2.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never and shall forever refrain from, directly and indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to copy, maker, import, distribute, offer for sale, or sell the Accused Furniture Designs, the Mallin Furniture Designs (including without limitation those shown in Exhibit A), any substantially similar variations thereof (consistent with legal standards in or interpreting the Copyright Act), and/or any variations thereof that are likely to cause confusion (consistent with legal standards in or interpreting the Lanham Act) with the Mallin Furniture Designs (collectively, the "Enjoined Designs").

3.0.   No Further Advertising or Marketing of the Enjoined Marks and/or Enjoined Designs. As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never, and shall forever refrain from using, licensing, advertising or marketing and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to use, license, advertise or market any of the Enjoined Marks and/or Enjoined Designs, including without limitation, in a printed medium, such as a magazine, newspaper, brochure, price sheet, price book, flyer, leaflet, on signage, billboards, or point of purchase displays, or in internet-based advertising, such as on any web site or social media page under Sunlord's possession, custody or control.

[D.E. 44-1, Sections 2.1, 2.2, and 3].

4

The Amended Complaint alleges that the terms and provisions in the Settlement Agreement are binding and enforceable against Sunlord, as well as against all other defendants in this lawsuit pursuant to section 11.4, which provides in relevant part that, "[t]his Agreement and all terms, provisions, and covenants contained herein are, and shall be, binding upon and shall inure to the benefit of each of the Parties hereto and their parents, subsidiaries, affiliates, related companies, manufacturers, distributors, licensors, licensees, officers, directors, employees, agents, independent contractors, and representatives[.]" [D.E. 44, ¶ 70]. With the Settlement Agreement, the parties also agreed that Plaintiff was the legitimate owner of several marks, including those sold under its Mallin line of outdoor furniture designs (the "Mallin Designs"), which includes the Mallin, Albany, Eclipse, Passage, and Volare designs. [*Id.*, ¶¶ 70-77].

According to the Amended Complaint, in 2020 Plaintiff discovered that Sunlord was intentionally breaching the Settlement Agreement by, among other things, replicating, marketing, advertising, offering for sale, and selling furniture pieces that are replicas of Plaintiff's Mallin Designs (the "Enjoined Designs") to multiple furniture retailers, including retailers in the state of Florida. [*Id.*, ¶¶ 82-90]. Plaintiff alleges that discovery from the parties has revealed communications and written materials reflecting that Defendant Lord, as the founder and Vice-President of Sunlord, has been involved in the company's operational activities, including the manufacturing of furniture and the processing of payments, and has been one of the

driving forces behind Sunlord's intentional breaches of the Settlement Agreement. [*Id.*, ¶¶ 107-115].

Specifically, the Amended Complaint claims that starting in mid-2018, Sunlord and co-Defendants Lord, Prestige, Gorr, Gorr & Associates, Pfahl, Pfahl Enterprises, and Sunrise Casual embarked on a scheme aimed at tortiously interfering with Plaintiff's customers by manufacturing and selling knock off versions of Plaintiff's Mallin Designs. [D.E. 44, ¶¶ 46, 133-138, 357-359]. Plaintiff cites communications between Lord and Gorr reflecting that Defendants referred to this alleged scheme as the "Mallin Program" and that, as part of this alleged scheme, Lord and his co-Defendants deliberately targeted and solicited Plaintiff's customers. The message below is one of those examples.

> Hello Albert Ginger:
>
> Below you will find the sales history by account for the products they bought from Mallin [Plaintiff]. These are the actual purchase numbers from these dealers for us to determine how we want to run them through our systems.
>
> | | |
> |---|---|
> | Californio Patio: | $[redacted] |
> | All American: | $[redacted] |
> | Yard Art: | $[redacted] |
> | Sunnyland: | $[redacted] |
> | Home & Patio: | $[redacted] |
> | | |
> | Totals: | $[redacted] |
>
> There are other dealers that can be added on a later date but this would be our dealer base to kick off the program.
>
> Thanks,
> Mark
>
> Mark Gorr
> Vice-President of U.S. Operations
> Patio Renaissance
> Sunlord Leisure Products, Inc.
> 9118 7th Street
> Rancho Cucamonga, CA 91730
> 909.980.6998 (Office)
> [redacted] Cell

[D.E. 44, ¶ 135]; *see also* [D.E. 83, p. 13].

Plaintiff alleges that Defendant Pfahl, Sunlord's Florida-based subcontractor, and his company, Pfahl Enterprises [D.E. 44, ¶¶ 18, 27, 337], have been part of this scheme from its very inception and have engaged in wrongful conduct in furtherance of it. [*Id.*, ¶¶ 357-359].[3] The Amended Compliant claims that to kicking off the program, Defendants acquired samples of Plaintiff's furniture designs, and then began replicating these designs in two different factories—Cong Ty Prestige (in Vietnam) and Dongguan Prestige (in China)—owned by Lord or his immediate family. [*Id.*, ¶¶ 136-149]. Plaintiff claims that Lord personally oversaw and led the production of these replicas in Asia. [*Id.*, ¶¶ 114, 360].

Once the replicas were ready, Lord and his co-Defendants began promoting the Enjoined Designs with furniture retailers, including with some of Plaintiff's customers. [*Id.*, ¶¶ 149-157]. For example, in June 2019 Defendant Gorr wrote an email to Chair King, about Lord's involvement in the production of replicas of furniture models that Chair King previously bought from Plaintiff. The email contained a tear sheet and price list for the "Edinburgh" and "Scandia" collections, which are two of the Enjoined Designs that replicate models within Plaintiff's Mallin Collection. *Id.* On another occasion, Defendants Gorr and Lord wrote to Fortunoff Backyard Store, another of Plaintiff's customers. That communication likewise

---

[3] Plaintiff will rely on evidence in the record showing that in connection with the production of the replicas, Defendant Pfahl sent an email to Lord relaying product specifications and details about Plaintiff's Mallin Designs that Lord needed to start the manufacturing process. In his email, Pfahl attached a spreadsheet with the file name "Mallin Model Dimension by R & D". *See* [D.E. 83, p. 13].

contained pricing and tear sheets for replicas of designs that Fortunoff previously bought from Plaintiff, and statements from Lord highlighting that the replicas' prices were 5 to 15% cheaper than Plaintiff's original designs and noting that Lord was open to negotiating if the volume was good. *Id.*

Defendants also advertised, marketed, and offered to sale the Enjoined Designs at an annual furniture retail show in Chicago in September of 2019. [*Id.*, ¶¶ 158-161]. In furtherance of the conspiracy and in connection with his promotion of the replicas, Defendant Pfahl, who attended the show along with Lord and Gorr, confirmed in writing that he needed the tear sheets for the replicas under the Mallin Program in order to show furniture retailers a file folder of the "program." *Id.*

According to the Amended Complaint, around the same time that Sunlord and Plaintiff executed the Settlement Agreement that dismissed the First Action, Lord and the other members of the scheme attempted to conceal their unlawful activity by using shell entities to reroute incoming payments for the sale of the Enjoined Designs. [*Id.*, ¶¶ 165-177]. Defendant Sunrise Casual, a Californian corporation owned by Lord and formed less than two months after the Settlement Agreement was executed, was one of those entities. *Id.* In connection with these allegations, Plaintiff cites communications between Defendants involving efforts to make sure that retailers stopped using Sunlord's trade name as the distributor of the Enjoined Designs. *Id.* In one of those emails, Lord instructed Gorr and a Sunlord salesperson to have a retailer re-issue a purchase order made payable to Sunrise Garden to break the links between the sale of the Enjoined Designs and Sunlord. [*Id.*, ¶ 172]. Plaintiff claims that Lord

is the sole owner of Sunrise Casual and cites to a written receipt indicating that payments to Sunrise Casual were sent to Sunlord's address in Rancho Cucamonga, California. [*Id.*, ¶¶ 172-177].

The Amended Complaint further alleges that the Defendants have engaged in prohibited activities in breach of the Settlement Agreement and have committed tortious acts within the state of Florida. Plaintiff claims that Defendants Sunlord and Prestige operate the websites www.patiorenaissance.net and patiorenaissance.com, which advertise and market Sunlord's furniture products to Florida customers. [D.E. 44, ¶¶ 18-28]. In addition, Sunlord contracts with Florida-based salesperson Pfahl, who is dedicated to the Florida market, and has received payments from Florida-based retailers for the purchase of furniture designs, including the Enjoined Designs at issue in this action. *Id.* Plaintiff claims that Lord, in his role as founder, Chairman, and Vice-President of Sunlord [D.E. 44, ¶¶ 18, 27, 107-110, 337], traveled to Florida in March 2020 to meet with Defendants Pfahl and Gorr, as well as with local furniture retailers and business owners. [D.E. 44, ¶ 33-34]. Plaintiff cites to electronic communications between Lord and Defendant Pfahl discussing Lord's meeting with Plaintiff's customer Zing Patio in Florida—a meeting that Pfahl attended—and reflecting Lord's and Pfahl's involvement in the sale and shipment of furniture items pertaining to the Enjoined Designs to Zing Patio. [D.E. 44, ¶ 34].

### III.   APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2)

where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## IV.   ANALYSIS

Defendants Pfahl and Pfahl Enterprises seek to dismiss counts nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, and twenty-six of the Amended Complaint for failure to state a claim. More specifically, Defendants argue that: (1) count nineteen (breach of contract) fails because neither Pfahl nor Pfahl Enterprises were signatories of the Settlement Agreement between Plaintiff and Sunlord; further, to the extent that Plaintiff claims that Defendants were acting as agents or representatives of Sunlord, they cannot be held liable for breaches carried out on behalf of their principal; (2) counts twenty and twenty-one (tortious interference claims) are deficient because the Amended Complaint fails to offer facts showing that Defendants had knowledge of the existence of the Settlement Agreement or Plaintiff's business relationships; and (3) once the breach of contract and tort claims are dismissed, the remaining conspiracy and declaratory judgment counts[4] lose any foundation on which to stand and, as such, must be dismissed. We consider each argument in turn.

---

[4] Counts twenty-two, twenty-three, twenty-four, and twenty-six.

### A. *Breach of Contract Claim (Count Nineteen)*

Plaintiff alleges breach of contract against Pfahl and Pfahl Enterprises in count nineteen. According to Plaintiff, the Settlement Agreement between Sunlord and Woodard is enforceable against both Defendants even though neither Defendant is a party to the Settlement Agreement. Plaintiff does not dispute that Defendants did not sign the agreement; instead, Plaintiff argues that because the agreement references parties other than Sunlord, including Defendants, the agreement is enforceable against Pfahl and Pfahl Enterprises under a theory of incorporation by reference. For the reasons that follow, Defendants's motion to dismiss count nineteen should be granted.

As Defendants point out, ordinarily, "[i]t is axiomatic that a party may not be held liable for a breach of contract if they were not a party to the contract or otherwise agreed to accept its terms." *Mana Internet Sols., Inc. v. Internet Billing Co., LLC.*, No. 06-61515, 2007 WL 1455973, at *2 (S.D. Fla. May 16, 2007); *see also Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms."). Indeed, Defendants cite to the holding in *Axiom Worldwide, Inc. v. Becerra*, 2009 U.S. Dist. LEXIS 40214 (M.D. Fla. 2009), where the Court dismissed a breach of contract claim against several non-signatories under similar circumstance. Like in this case, the *Axiom* Plaintiff sought to extend the terms of a settlement agreement to distributors who were expressly referenced in the agreement, but who were not parties to it. *See id.* at *18. Specifically, the signatory

party in that case agreed to have several of its distributors agree to be bound to a non-disparagement provision in the settlement agreement in writing, but this subsequent writing was never executed. Accordingly, the court found that plaintiff failed to allege the existence of a binding contract between it and the non-signatories. *See id.* at *19.[5]

Woodard argues that, notwithstanding the fact that Pfahl and Pfahl Enterprises are not parties to the Settlement Agreement, they should still be bound by it because "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." [D.E. 91, p. 17] (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009)). However, as Defendants point out, besides making this passing reference to the *Arthur Andersen*'s standard, Plaintiff fails to cite any other authority supporting its claim that mere references to a non-signatory in a contract are sufficient to bind that non-signatory to the terms of such contract.

Plaintiff's lack of supporting authority is perhaps explained by the fact that its argument mischaracterizes the effects of the theory of incorporation by reference as applied in the context of binding non-signatories. The effect of incorporation by reference is not to impose upon non-signatories the obligations of a contract in which

---

[5] Note, however, that in *Axiom* Plaintiffs did not raise any theories for binding non-signatories to a contract, *see generally* [D.E. 34; D.E. 57], and the Court expressly stated it so: "Plaintiffs [did not] allege the existence of other circumstances that would allow Plaintiffs to pursue a breach of contract action against non-parties." *See Axiom*, 2009 U.S. Dist. LEXIS 40214 at *19.

they are referenced; rather, the theory subjects non-signatories to the terms of a contract when the non-signatories are parties to a separate agreement that references—and, hence, incorporates—the terms of the contract being enforced. *See Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC,* No. 06-22347-CIV, 2007 WL 601992, at *10 (S.D. Fla. Feb. 21, 2007) ("A nonsignatory may be bound by an agreement to arbitrate where the arbitration provision is incorporated by reference in an agreement signed by the nonsignatory.") (citation omitted); *Trustees of Carpenters Health & Welfare Tr. Fund of S. Fla. v. Universal Const. Servs.*, 695 F. Supp. 554, 560 (S.D. Fla. 1988) ("Defendant was bound by the terms of the Memorandum Agreement, therefore, it was bound under the MCA, which was explicitly incorporated by reference within the Memorandum Agreement."); *see also* 127 Am. Jur. Trials 107 ("Incorporation by reference effectively occurs when parties to a primary contract (which has no arbitration provision) incorporate by reference a separate agreement (which requires arbitration), specifically referencing that second agreement with particularity[.]").

Here, however, the only agreement that Woodard points to is the Settlement Agreement, to which neither Pfahl nor Pfahl Enterprises are signatories. This Court has found no cases in this Circuit where a non-signatory has been bound to the terms of a contract merely by virtue of being referenced in that contract, nor has Woodard provided any. Moreover, Woodard also fails to contest, or even address, Defendants' argument that, to the extent that Pfahl and Pfahl Enterprises were acting as agents of Sunlord, a breach of contract actions against them would fail because the agent of

a principal is not independently liable for a breach of the principal's contact. Accordingly, the Court recommends that count nineteen be **DISMISSED WITH PREJUDICE**.

### B. *The Tortious Interference Claims (Counts Twenty and Twenty-one)*

Turning to counts twenty and twenty-one, Plaintiff claims that Pfahl and Pfahl Enterprises are liable for tortiously interfering with the Settlement Agreement and Woodard's advantageous business relationships. Based on the allegations in the Amended Complaint, the Court finds that Plaintiff has alleged sufficient facts to state its claims for tortious interference. "Tortious interference with a contract and tortious interference with a business relationship require pleading virtually the same elements." *Drewes v. Cetera Fin. Grp., Inc.*, No. 9:19-CV-80531, 2021 WL 5810634, at *14 (S.D. Fla. Dec. 7, 2021). "The elements of a Florida law tortious interference with contractual relations claim are: (i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018).

Defendants take issue with the tortious interference claims because, in their view, the Amended Complaint fails to allege specific facts demonstrating that Defendants had knowledge of the Settlement Agreement or Woodard's business relationships. [D.E. 79, p. 11]. Specifically, Defendants note that nowhere in the Amended Complaint can one locate specific statements indicating that Defendants received a copy of or were ever told about the Settlement Agreement, or that

Defendants knew who Plaintiff's other customers were. According to Defendants, this deficit in detail renders the tortious interference claims susceptible to dismissal under a 12(b)(6) motion at this pleading stage of the case. The Court disagrees.

First, Defendants' contention is in direct conflict with governing Eleventh Circuit precedent. Indeed, the Eleventh Circuit recently reversed a district court's dismissal of a tortious interference claim where the dismissal was based on the absence of specific allegations of defendants' knowledge of the contracts at issue. *See Sun Life*, 904 F.3d at 1216. In reversing the district court, the Eleventh Circuit expressly held that, "[c]ontrary to the district court's conclusion, [Plaintiff] need not have pled [Defendant's] knowledge of the relevant contracts with specificity, even assuming Rule 9(b) applies." *Id*. Notably, the Eleventh Circuit held that general assertions of knowledge and allegations of the interference in the complaint were sufficient to plead a tortious interference claim even under the more exacting standard of Rule 9(b)—which does not apply to this case. *See id*.; *see also Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302, 1319 n10 (S.D. Fla. 2013) (noting that the "Rule 9(b) [pleading standard] does not apply to a tortious interference claim" that does not sound in fraud); *Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC*, 2018 U.S. Dist. LEXIS 182132, at *16 n.3 (M.D. Fla. Oct. 24, 2018) ("Rule 9(b) is inapplicable because Plaintiffs' claim for tortious interference does not sound in fraud."); *Cap. Health Partner, LLC v. Skanda Grp. of Indus. LLC*, No. 6:20-CV-2172-PGB-LRH, 2021 WL 3129262, at *1 (M.D. Fla. June 9, 2021) (same).

Defendants attempt to skirt around the holding in *Sun Life* and its applicability to the present case, but these efforts are unpersuasive. For starters, Defendants mischaracterize the *Sun Life* holding, claiming that "it does not contain any detail as to what the allegations were in the operative complaint that supported the court's decision." [D.E. 112, p. 7]. This is incorrect. *Sun Life* relied on paragraphs in the Amended Complaint asserting that defendants knew about the contracts at issue and detailing the scheme through which defendants interfered with those contracts. *See Sun Life*, 904 F.3d at 1216-17.[6]

Second, Defendants also claim that the *Sun Life* holding may run afoul of the Supreme Court's holding in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). This is a groundless argument that is belied by the holding's reasoning, which was predicated on the plausibility pleading standard,[7] as well as by its application in subsequent cases. *See Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A.*, No. 18-80311-CIV, 2019 WL 3412169, at *9 (S.D. Fla. May 14, 2019) ("A claim for tortious interference need not plead with specificity the defendant's knowledge of an existing contract act, even where Rule 9(b) applies."); *Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *6 (M.D. Fla. May 29, 2019) ("Plaintiffs need not plead defendants' knowledge of the relevant

---

[6] Additionally, a review of Plaintiff's Amended Complaint in that case does not reveal any material differences between the level of detail pled in that brief and that pled by Woodard in its Amended Complaint here.

[7] "To state a claim, a 'complaint must include allegations plausibly suggesting (not merely consistent with) the plaintiff's entitlement to relief." *Sun Life*, 904 F.3d at 1207 (quoting *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1334 (11th Cir. 2015)) (quotation omitted).

contracts and intent with specificity, even assuming Rule 9(b) applies."); *Wyndham Vacation Ownership, Inc. v. US Consumer Att'ys, P.A.*, No. 18-81251-CIV, 2019 WL 7837887, at *11 (S.D. Fla. July 3, 2019) (same).

Third, Defendants' argument challenging the tortious interference with business claim is unavailing for similar reasons. Defendants claim that this count fails because the Amended Complaint does not allege specific facts demonstrating that Defendants had knowledge of Woodard's business relationships. However, as Plaintiff points out, the Eleventh Circuit and several courts in this district have rejected similar arguments in the past. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019) ("We cannot conclude that the Body Shops' failure to identify particular potential customers who were steered away constitutes a failure to give each defendant fair notice of the claim against it."); *Diamond Resorts*, 2019 WL 3412169 at *10 ([Defendants] argue that the tortious interference claim fails to satisfy Rule 9(b) because the SAC does not plead with specificity the identities of the customers or contractual provisions interfered with. As discussed, supra, this level of detail is not required."); *Bostwick Lab'ys, Inc. v. Farley*, No. CV 14-60316-CIV, 2014 WL 12580032, at *4 (S.D. Fla. Aug. 1, 2014) (plaintiff not required to specifically identify customers whose business was diverted, or with whom plaintiff had a contractual relationship, to satisfy Rule 9(b)); *AstroTel, Inc. v. Verizon Fla.*, LLC, No. 8:11-CV-2224-T-33TBM, 2012 WL 1581596, at *8 (M.D. Fla. May 4, 2012) ("Although AstroTel does not plead specific customer contracts that were injured, that is not necessary at this point in the litigation.").

Finally, Defendants categorize the allegations in the Amended Complaint as conclusory and insufficient, but in doing so Defendants focus only on two single paragraphs of the Amended Complaint. [D.E. 79, p. 11]. Yet, the Amended Complaint includes many more allegations than Defendants suggest. Among other things, Plaintiff alleges that Defendant Lord led a scheme to manufacture and sell copies of Plaintiff's furniture designs, and that Defendants Pfahl and Pfahl Enterprises have been part of this scheme from its very inception. [D.E. 44, ¶¶ 71, 107, 114, 135, 357]. Plaintiff claims that in furtherance of this scheme, Pfahl and Pfahl Enterprises conspired with co-Defendants to manufacture furniture replicas in Asian, and to advertise and sell the replicas to retailers in the United States, including in Florida [*id.*, ¶¶ 139-146, 359, 365, 382]. Plaintiff alleges that Lord deliberately targeted and solicited Plaintiff's customers, and names several of these customers in the Amended Complaint. [*Id.*, ¶¶ 147-154]. Plaintiff also claims that Lord traveled to Florida in March 2020 to meet with Pfahl and Pfahl Enterprises, as well as with local furniture retailers, including Plaintiff's customer Zing Patio. [D.E. 44, ¶ 33-34]. Plaintiff cites to electronic communications between Lord and Pfahl discussing their meeting with Zing Patio in Florida and reflecting that Lord and Pfahl were involved in the sale and shipment of knock-off furniture items to Zing Patio. *Id.*[8]

---

[8] In support of these claims, Plaintiff will rely on evidence in the record, including email communications and commercial invoices, showing that Defendants sold their Aberdeen products (a replica of Plaintiff's Albany collection) to Zing Patio, and that both Lord and Pfahl were involved in the logistics of the sale and shipment of Aberdeen items to Zing Patio. [D.E. 83, p. 14].

Based on these allegations, the Court concludes that at this point in the litigation Plaintiff has alleged enough facts to state a claim for tortious interference with contract and tortious interference with business relationships. For these reasons, Defendants' motion to dismiss counts twenty and twenty-one should be **DENIED**.

### C. <u>*Civil Conspiracy Claims (Counts Twenty-two, Twenty-three, and Twenty-four)*</u>

Plaintiff also advances three counts of conspiracy against Pfahl and Pfahl Enterprises. Plaintiff alleges that Defendants conspired to: (1) tortiously interfere with the Settlement Agreement (count twenty-two); (2) tortiously interfere with Plaintiff's business relationships (count twenty-three); and (3) breach the Settlement Agreement (count twenty-four). Defendants predicate their objection to the conspiracy counts solely on the assumption that Plaintiff fails to properly plead the tortious interference and breach of contract claims and, as such, there are no underlying wrongs to support a conspiracy [D.E. 79, p. 12; D.E. 112, pp. 8-9]. As detailed above, however, this assumption is correct only with respect to the breach of contract claim. Accordingly, count twenty-four should be dismissed. However, because Plaintiff has properly plead the tortious interference claims, Defendants' motion to dismiss counts twenty-two and twenty-three should be denied.

### i.    **Conspiracy to Tortiously Interfere with Contractual and Business Relations (Counts Twenty-two and Twenty-three)**

Defendants' motion to dismiss counts twenty-two and twenty-three should be denied because Woodard has sufficiently alleged the existence of a conspiracy and has

articulated specific actions attributable Pfahl and Pfahl Enterprises in furtherance of the alleged conspiracy. To state a claim for civil conspiracy under Florida law, Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)); *see Witmer v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering*, 631 So. 2d 338, 342 (Fla. 4th DCA 1994) (observing that an "[a]greement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act"); *Nicholson v. Kellin*, 481 So. 2d 931, 935 (Fla. 5th DCA 1985) (stating that "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose by unlawful means"). Each coconspirator need not act to further a conspiracy; each "need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (also stating that "[t]he existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence"); *see also Nicholson*, 481 So. 2d at 935 (confirming that an act done in pursuit of a conspiracy by one conspirator is an act for which each other conspirator is jointly and severally liable).

In its Amended Complaint, Woodard alleges that in mid-2018 Sunlord and the other defendants in this suit engaged in a scheme to tortiously interfere with Plaintiff's customers and infringe upon Plaintiff's rights by manufacturing, importing, marketing, and selling various knock off versions of Plaintiff's Mallin furniture designs. The Amended Complaint alleges that Pfahl and Pfahl Enterprises have been part of this scheme from its very inception, and Plaintiff cites to electronic communications evidencing that defendants expressly referred to this scheme as "the program" or the "Mallin project." The Amended Complaint also describes the specific steps that the scheme members took to kick off and execute the scheme, including replicating Plaintiff's designs in foreign factories; targeting Plaintiff's customers and offering the replicas at lower prices; selling the replicas to Florida furniture retailers through Florida-based Pfahl and Pfahl Enterprises; and using shell companies, including defendant Sunrise Casual, to hide payments derived from the sale of these Enjoined Designs. [D.E. 44, ¶¶ 18-20, 27, 33-34, 135, 139-146, 150-154, 173-177, 337-347, 352, 357-368].[9]

Plaintiff also claims that several overt acts in furtherance of the conspiracy took place in Florida. Plaintiff claims that in furtherance of this scheme, Lord travel to Florida in March 2020 to meet with Defendants Pfahl and Pfahl Enterprises, and

---

[9] To illustrate, Plaintiff will rely on evidence in the record showing that Defendant Pfahl shared with Lord product specifications of Plaintiff's designs needed to start manufacturing the replicas; that Defendant Gorr instructed Pfahl in Florida to update his price list "for the Mallin project" with new price lists relating to Plaintiff's Mallin Designs; that Pfahl distributed promotional materials for the Enjoined Designs to retailers in Florida; and that Lord and Pfahl were involved in the sale and shipment of Enjoined Designs to Zing Patio in Florida. [D.E. 83, pp. 7, 13, 14].

to have in-person meetings with several local furniture retailers, including Plaintiff's customer Zing Patio. The Amended Complaint alleges that Sunlord sold its Aberdeen replicas to Zing Patio, and that Lord and Pfahl were involved in the sale and shipment of furniture items pertaining to the Enjoined Designs to Zing Patio in Florida. [*Id.*, ¶¶ 33-34; D.E. 83, pp. 1, 7, 13].

Finally, Plaintiff alleges that its goodwill and reputation have been harmed and claims economic injury because of the alleged conspiracy in the form of diverted sales. [D.E. 44, ¶ 257]. Plaintiff also claims that Pfahl and Pfahl Enterprises have profited from this conspiracy. [*Id.*, ¶ 368]. Accordingly, Plaintiff has sufficiently alleged the existence of a conspiracy, articulating specific actions attributable to Pfahl and Pfahl Enterprises in furtherance of the alleged scheme. *See W. Coast Life Ins. Co. v. Life Brokerage Partners. LLC*, No. 08-80897-Civ-Ryskamp/Vitunac, 2009 U.S. Dist. LEXIS 81650, at *23 (S.D. Fla. Aug. 11, 2009) ("A conspirator 'need not take part in the planning, inception, or successful conclusion of a conspiracy[;]' the conspirator 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'") (quoting *Donofrio v. Matassini*, 503 So.2d 1278, 1281 (Fla. 2d DCA 1987)); *Pafumi v. Davidson*, No. 05-61679-CIV-COHN/SNOW, 2007 U.S. Dist. LEXIS 43138, at *15 (S.D. Fla. June 14, 2007) ("It is not necessary, as Laidlaw contends, that each defendant charged with conspiracy be accused of committing an overt act so long as an overt act, in this case the making of misrepresentations, was committed by at least one co-conspirator."). Based on these

allegations, Defendants' motion to dismiss counts twenty-two and twenty-three should be **DENIED**.

### ii.    Conspiracy to Breach Contract (Count Twenty-four)

Count twenty-four should be dismissed for two reasons. First, Plaintiff has failed to plead a claim for breach of contract against Pfahl and Pfahl Enterprises, and without an underlying cause of action there cannot be a conspiracy. *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012) ("Without an underlying violation [], no valid conspiracy claim can be shown in this case[.]"); *Alhassid v. Bank of Am.*, N.A., 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) ("Neither Florida nor Nevada recognizes an independent cause of action for civil conspiracy; rather, the plaintiff must allege an underlying illegal act or tort on which conspiracy is based."); *Hercules Cap., Inc. v. Gittleman*, No. 16-CV-81663, 2018 WL 395489, at *24 (S.D. Fla. Jan. 12, 2018) ("An actionable conspiracy requires an actionable underlying tort or wrong") (citation omitted).

A second reason supporting dismissal of this count is that a breach of contract claim alone cannot serve as the basis to support a civil conspiracy claim. *See Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1318 (S.D. Fla. 2014) (noting that "to construe a mere breach of contract claim as a wrong or unlawful act in substantiating a civil conspiracy claim would be inconsistent with the fundamental division between contract and tort actions.") (citation and quotation omitted); *Ardell, Inc. v. Lochiel Expeditions, LTD*, No. 15-60907-CIV, 2016 WL 11600761, at *3 (S.D. Fla. Oct. 21, 2016) ("[T]he Court agrees that breach of contract cannot form the basis for civil

conspiracy under Florida law.") (citing *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009)). Accordingly, count twenty-four should be **DISMISSED with prejudice**.

### D. *Declaratory Judgment (Count Twenty-Six)*

Plaintiff's request for declaratory relief against Pfahl and Pfahl Enterprises should be dismissed because Plaintiff has failed to properly plead a breach of contract claim against the Pfahl Defendants.

A court may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction. 28 U.S.C. § 2201. "The only relevant inquiry in a motion to dismiss a declaratory judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Fernando Grinberg Trust Success Int. Properties, LLC v. Scottsdale Ins. Co.*, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) (citing *Gov't Emp. Ins. Co. v. Anta*, 379 So. 2d 1038, 1039 (Fla. 3d DCA 1980)). "[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." *Id*. (quoting *McIntosh v. Harbour Club Villas*, 468 So. 2d 1075, 1080-81 (Fla. 3d DCA 1985)).

Plaintiff seeks a declaration of its rights under the Settlement Agreement vis-à-vis Pfahl and Pfahl Enterprises. [D.E. 44, ¶ 418]. Specifically, Plaintiff seeks a declaration that: (a) Defendants are in violation of the Settlement Agreement; (b) Plaintiff is entitled to remedies as a result of Defendants' breach of the Settlement

Agreement; (c) Plaintiff is entitled to specific performance of the Settlement Agreement; and (d) Plaintiff is entitled to attorneys' fees pursuant to the terms of the Settlement Agreement. *Id*. However, Plaintiff has failed to state a claim for breach of the Settlement Agreement against Pfahl and Pfahl Enterprises. *See* Section A, supra. Accordingly, Plaintiff's claim for a declaration of its rights and interests under the Settlement Agreement relative to Pfahl and Pfahl Enterprises lacks a justiciable controversy, and, for that reason, should be **DISMISSED without prejudice**. *See Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 133 (S.D. Fla. 2021) ("Because the breach-of-contract claim is dismissed, no controversy exists[,]" and the declaratory relief claims must be dismissed); *Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.*, 493 F. Supp. 3d 1179, 1187 (M.D. Fla. 2020) ("An actual controversy must exist before the Court can afford declaratory relief and, because the breach of contract claim is dismissed, there is no controversy."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1192 (M.D. Fla. 2020) (same).

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss [D.E. 79] be **GRANTED in part** and **DENIED in part**:

A.   Defendants' motion to dismiss count nineteen should be **GRANTED with prejudice**.

B.   Defendants' motion to dismiss counts twenty, twenty-one, twenty-two, and twenty-three should be **DENIED**.

C.    Defendants' motion to dismiss count twenty-four should be **GRANTED with prejudice**.

D.    Defendants' motion to dismiss count twenty-six should be **GRANTED without prejudice**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to order the parties to have **seven (7) days** from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Accordingly, written objections are due by **February 18, 2022**. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 11th day of February, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge