# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-23104-CV-WILLIAMS/TORRES

WOODARD-CM, LLC,

        Plaintiff,

v.

SUNLORD LEISURE PRODUCTS, INC.
d/b/a/ PATIO RENAISSANCE, PRESTIGE
INTERNATIONAL INVESTMENTS CO.,
LTD., ALBERT LORD f/k/a AI PING LUO,
SUNRISE CASUAL FURNITURE, INC.,
MARK GORR, GORR & ASSOCIATES,
INC., JUSTIN PFAHL, and PFAHL
ENTERPRISES, INC.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Prestige International Investments, Co.,

Ltd.'s ("Prestige" or "Defendant") Motion to Dismiss [D.E. 119] Woodard-CM, LLC.'s

("Woodard" or "Plaintiff") First Amended Complaint [D.E. 44] pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff responded to Defendant's

motion on July 20, 2021 [D.E. 120] to which Defendants replied on July 27, 2021

[D.E. 122].[1] Therefore, Defendant's motion is now ripe for disposition. After careful

_____

[1] The Honorable Judge Kathleen M. Williams referred the Motion to the undersigned
on November 22, 2021. [D.E. 137].

consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Defendant's Motion should be **GRANTED in part** and **DENIED in part**.

## I.   *PROCEDURAL HISTORY*

Plaintiff commenced this action against Sunlord Leisure Products, Inc. d/b/a Patio Renaissance ("Sunlord" or "Patio") on July 27, 2020, for breach of contract and declaratory relief. [D.E. 1]. On August 6, 2020, Plaintiff filed an Expedited Motion for Preliminary Injunction [D.E. 10]. On August 17, 2020, after conducting a hearing on Plaintiff's Motion for Preliminary Injunction on August 13, 2020, and upon the agreement of the parties, the Court entered an Order granting Plaintiff's Motion for Preliminary Injunction. [D.E. 20]. On March 10, 2021, Plaintiff filed a Motion for Leave to Amend the Complaint and Join Parties [D.E. 39], and on April 9, 2021, after receiving approval from the Court, Plaintiff filed its First Amended Complaint [D.E. 44].

In its Amended Complaint, Plaintiff joint seven new defendants to this lawsuit among them Prestige.[2] The Amended Complaint brings seven different claims against Prestige: breach of settlement agreement ("Count IV"), tortious interference with contract ("Count V"), tortious interference with a business relationship ("Count VI"), three claims of civil conspiracy ("Counts XXII, XXIII, and XXIV"), and declaratory judgement ("Count XXVI"). *Id.*

---

[2] The other added defendants are Albert Lord a/k/a Ai Ping Luo ("Lord"), Sunrise Casual Furniture, Inc. ("Sunrise Casual"), Mark Gorr ("Gorr"), Gorr & Associates, Inc. ("Gorr & Associates"), Justin Pfahl ("Pfahl"), and Pfahl Enterprises, Inc. ("Pfahl Enterprises").

## II.   BACKGROUND

This action relates to a prior lawsuit filed by Plaintiff against Sunlord in this District on July 12, 2019, for trademark infringement and related claims. *See Woodard-CM, LLC v. Sunlord Leisure Products, Inc.* Case 19-cv-22907-CMA (the "First Action"). Plaintiff brought the First Action alleging that Sunlord, a company founded by Defendant Lord in 2004 and one of Plaintiff's direct competitors in the outdoor furniture industry, was intentionally copying Plaintiff's unique furniture designs. [D.E. 44, ¶¶ 54-64].

In August of 2019, Plaintiff and Sunlord entered into a Settlement Agreement whereby Plaintiff agreed to dismiss with prejudice the First Action, which Plaintiff did in September 2019. [D.E. 44-1, 44-3]. The Settlement Agreement required Sunlord to, among other things, forever refrain from directly or indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributers, and independent contractors, to copy, make, import, distribute, offer for sale, or sell the "Enjoined Designs" (as defined in the Settlement Agreement).

Plaintiff alleges that several provisions in that Settlement Agreement give rise to the instant lawsuit [D.E. 44, ¶ 68], including the following provisions, which are referred to herein as among the "Prohibited Activities":

2.1.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never used, and hereby promises not to use, and/or direct or cause any third party, including but not limited to, manufacturers, distributors, and independent contractors to use any corporate name, trade name, trademark, service mark, brand name, collections name, product name, slogan, logo-design, label, packaging, advertisement, price book, description, phase, social media page or domain name incorporating or comprising the Woodard Trademarks, either alone or in combination with any other words, letters, graphical depictions or color combinations, including any and phonetic or foreign equivalents thereof, or any confusingly similar variations thereof, and shall further refrain from using any of Woodard's intellectual property, including collection names, stock numbers, photographs, or other indicia (each and all of the foregoing referred to hereinafter as the "Enjoined Marks"), in connection with furniture or other competing products in the United States and throughout the world.

2.2.   As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never and shall forever refrain from, directly and indirectly, copying, making, importing, distributing, offering for sale, or selling, and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to copy, maker, import, distribute, offer for sale, or sell the Accused Furniture Designs, the Mallin Furniture Designs (including without limitation those shown in Exhibit A), any substantially similar variations thereof (consistent with legal standards in or interpreting the Copyright Act), and/or any variations thereof that are likely to cause confusion (consistent with legal standards in or interpreting the Lanham Act) with the Mallin Furniture Designs (collectively, the "Enjoined Designs").

3.0.   No Further Advertising or Marketing of the Enjoined Marks and/or Enjoined Designs. As of the Effective Date of this Agreement, Sunlord, its parents, subsidiaries, affiliates, related companies, licensors, licensees, officers, directors, employees, agents, and representatives, has never, and shall forever refrain from using, licensing, advertising or marketing and/or directing or causing any third party, including but not limited to, manufacturers, distributors, and independent contractors, to use, license, advertise or market any of the Enjoined Marks and/or Enjoined Designs, including without limitation, in a printed medium, such as a magazine, newspaper, brochure, price sheet, price book, flyer, leaflet, on signage, billboards, or point of purchase displays, or in internet-based advertising, such as on any web site or social media page under Sunlord's possession, custody or control.

[D.E. 44-1, Sections 2.1, 2.2, and 3].

The Amended Complaint alleges that the terms and provisions in the Settlement Agreement are binding and enforceable against Sunlord, as well as against all other defendants in this lawsuit pursuant to section 11.4, which provides in relevant part that, "[t]his Agreement and all terms, provisions, and covenants contained herein are, and shall be, binding upon and shall inure to the benefit of each of the Parties hereto and their parents, subsidiaries, affiliates, related companies, manufacturers, distributors, licensors, licensees, officers, directors, employees, agents, independent contractors, and representatives[.]" [D.E. 44, ¶ 70]. With the Settlement Agreement, the parties also agreed that Plaintiff was the legitimate owner of several marks, including those sold under its Mallin line of outdoor furniture designs (the "Mallin Designs"), which includes the Mallin, Albany, Eclipse, Passage, and Volare designs. [*Id.*, ¶¶ 70-77].

According to the Amended Complaint, in 2020 Plaintiff discovered that Sunlord was intentionally breaching the Settlement Agreement by, among other things, replicating, marketing, advertising, offering for sale, and selling furniture pieces that are replicas of Plaintiff's Mallin Designs (the "Enjoined Designs") to multiple furniture retailers, including retailers in the state of Florida. [*Id.*, ¶¶ 82-90]. Plaintiff alleges that discovery from the parties has revealed communications and written materials reflecting that Defendant Lord, as the founder and Vice-President of Sunlord, has been involved in the company's operational activities, including the manufacturing of furniture and the processing of payments, and has been one of the

driving forces behind Sunlord's intentional breaches of the Settlement Agreement. [*Id.*, ¶¶ 107-115].

Specifically, the Amended Complaint claims that starting in mid-2018, Sunlord and co-Defendants Prestige, Lord, Gorr, Gorr & Associates, Pfahl, Pfahl Enterprises, and Sunrise Casual embarked on a scheme aimed at tortiously interfering with Plaintiff's customers by manufacturing and selling knock off versions of Plaintiff's Mallin Designs. [D.E. 44, ¶¶ 46, 133-138, 357-359]. Plaintiff cites communications between Lord and Gorr reflecting that Defendants referred to this scheme as the "Mallin Program" and that, as part of this alleged scheme, Lord and his co-Defendants deliberately targeted and solicited Plaintiff's customers. The message below is one of those examples.

Hello Albert Ginger:

Below you will find the sales history by account for the products they bought from Mallin [Plaintiff]. These are the actual purchase numbers from these dealers for us to determine how we want to run them through our systems.

| | |
|---|---|
| Californio Patio: | $[redacted] |
| All American: | $[redacted] |
| Yard Art: | $[redacted] |
| Sunnyland: | $[redacted] |
| Home & Patio: | $[redacted] |
| Totals: | $[redacted] |

There are other dealers that can be added on a later date but this would be our dealer base to kick off the program.

Thanks,
Mark

Mark Gorr
Vice-President of U.S. Operations
Patio Renaissance
Sunlord Leisure Products, Inc.
9118 7th Street
Rancho Cucamonga, CA 91730
909.980.6998 (Office)
[redacted] Cell

[D.E. 44, ¶ 135]; *see also* [D.E. 120, p. 3].

Plaintiff alleges that Defendant Prestige, a related company and affiliate of Sunlord [D.E. 44, ¶¶ 110-115], has been part of this scheme from its very inception. [*Id.*, ¶ 357-359]. Plaintiff claims that Lord, in his capacity as Chairman and owner of Sunlord and Prestige, acted on behalf of and in representation of both companies. [*Id.*, ¶¶ 110-115]. The Amended Complaint further claims that to kicking off the program, Sunlord acquired samples of Plaintiff's furniture designs and, in concert with Prestige, began replicating these designs in two different Prestige factories— Cong Ty Prestige (in Vietnam) and Dongguan Prestige (in China)—owned by Lord or his immediate family. [*Id.*, ¶¶ 136-149, 358-359]. Plaintiff claims that Lord personally oversaw and led the production of these replicas in Asia. [*Id.*, ¶¶ 114, 360].[3]

Once the replicas were ready, Prestige shipped these Enjoined Designs to the United States, among them the "Aberdeen" and "Edinburgh" replicas [*id.*, ¶¶ 149-157, 186], where Lord and co-Defendants began promoting them with furniture retailers, including with some of Plaintiff's customers. *Id.* For example, in June 2019 Defendant Gorr wrote an email to Chair King, about Lord's involvement in the production of replicas of furniture models that Chair King previously bought from Plaintiff. The email contained a tear sheet and price list for the "Edinburgh" and "Scandia" collections, which are two of the Enjoined Designs that replicate models

---

[3] In support of these claims, Plaintiff points to evidence in the record showing that Lord expressly stated in writing that the Mallin project should be executed through Prestige in order to disassociate U.S.-based Sunlord from the replication of Plaintiff's Mallin designs, and that those replicas would be sold at Prestige's lower price to Plaintiff's customers. *See* [D.E. 120, p. 3].

within Plaintiff's Mallin Collection. *Id.* On another occasion, Defendants Gorr and Lord wrote to Fortunoff Backyard Store, another of Plaintiff's customers. That communication likewise contained pricing and tear sheets for replicas of designs that Fortunoff previously bought from Plaintiff, and statements from Lord highlighting that the replicas' prices were 5 to 15% cheaper than Plaintiff's original designs and noting that Lord was open to negotiating if the volume was good. *Id.*

Defendants also advertised, marketed, and offered to sale the Enjoined Designs at an annual furniture retail show in Chicago in September of 2019 through the use of tear sheets featuring the knock-off designs that Prestige had shipped to Sunlord's address in California. [D.E. 44, ¶¶ 158-161, 364, 381]. In furtherance of the conspiracy and in connection with his promotion of the replicas, Defendant Pfahl, who attended the show along with Lord and Gorr, confirmed in writing that he needed the tear sheets for the replicas under the Mallin Program in order to show furniture retailers a file folder of the "program." *Id.*

According to the Amended Complaint, around the same time that Sunlord and Plaintiff executed the Settlement Agreement that dismissed the First Action, Lord and the other members of the scheme attempted to conceal their unlawful activity by using shell entities to reroute incoming payments for the sale of the Enjoined Designs. [*Id.*, ¶¶ 165-177]. Defendant Sunrise Casual, a Californian corporation owned by Lord and formed less than two months after the Settlement Agreement was executed, was one of those entities. *Id.* In connection with these allegations, Plaintiff cites communications between Defendants involving efforts to make sure that retailers

stopped using Sunlord's trade name as the distributor of the Enjoined Designs. *Id.* In one of those emails, Lord instructed Gorr and a Sunlord salesperson to have a retailer re-issue a purchase order made payable to Sunrise Garden to break the links between the sale of the Enjoined Designs and Sunlord. [*Id.*, ¶ 172]. In another communication Lord instructed a Sunlord sales agent to ask a customer to change the supplier's name for the Mallin replicas to "Prestige Furniture." [*Id.*, ¶ 168].

The Amended Complaint further alleges that the Defendants have engaged in prohibited activities in breach of the Settlement Agreement and have committed tortious acts within the state of Florida. Plaintiff claims that Defendants Sunlord and Prestige operate the websites www.patiorenaissance.net and patiorenaissance.com, which advertise and market Sunlord's furniture products to Florida customers. [*Id.*, ¶¶ 18-28]. In addition, Sunlord contracts with Florida-based salesperson Pfahl, who is dedicated to the Florida market, and has received payments from Florida-based retailers for the purchase of furniture designs, including the Enjoined Designs at issue in this action. *Id.* Plaintiff claims that Lord, in his role as founder, Chairman, and owner of Sunlord and Prestige [*id.*, ¶¶ 18, 27, 107-110, 337], traveled to Florida in March 2020 to meet with Defendants Pfahl and Gorr, as well as with local furniture retailers and business owners. [*id.*, ¶ 33-34]. Plaintiff cites to electronic communications between Lord and Defendant Pfahl discussing Lord's meeting with Plaintiff's customer Zing Patio in Florida—a meeting that Pfahl attended—and reflecting Lord's and Pfahl's involvement in the sale and shipment of furniture items pertaining to the Enjoined Designs to Zing Patio. [*Id.*, ¶ 34].

### III.    APPLICABLE PRINCIPLES AND LAW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## IV.   ANALYSIS

Defendant Prestige seeks to dismiss counts four, five, six, twenty-two, twenty-three, twenty-four, and twenty-six of the Amended Complaint for failure to state a claim. More specifically, Defendant argues that: (1) <u>count four</u> (breach of contract) fails because Prestige is not a signatory of the Settlement Agreement between Plaintiff and Sunlord, and, to the extent that Prestige is an affiliate or related company of Sunlord, this is not enough to bind it to the terms of a contract entered into by Sunlord; (2) <u>counts five and six</u> (tortious interference claims) are deficient because the Amended Complaint fails to offer facts showing that Prestige's actions were the proximate cause of the breach of the Settlement Agreement or the interference with Plaintiff's business relations; and (3) because the breach of contract and tort claims ought to be dismissed, the remaining conspiracy and declaratory

judgment counts[4] lose any foundation on which to stand and, as such, must be dismissed. We consider each argument in turn.

### A. *Breach of Contract Claim (Count Four)*

Plaintiff alleges breach of contract against Prestige in count four. According to Plaintiff, the Settlement Agreement between Sunlord and Woodard is enforceable against Prestige even though Prestige is not a party to the Settlement Agreement. Plaintiff does not dispute that Prestige did not sign the agreement; instead, Plaintiff argues that because the agreement references parties other than Sunlord, including Defendant, a "sister" and "affiliate" company, the agreement is enforceable against it under a theory of incorporation by reference. For the reasons that follow, Defendant's motion to dismiss count four should be granted.

"It is axiomatic that a party may not be held liable for a breach of contract if they were not a party to the contract or otherwise agreed to accept its terms." *Mana Internet Sols., Inc. v. Internet Billing Co., LLC.*, No. 06-61515, 2007 WL 1455973, at *2 (S.D. Fla. May 16, 2007); *see also Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms."). Accordingly, Defendant is right in pointing out that "[o]rdinarily, one who is not a party to a settlement agreement cannot be bound by its terms. *Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369, 371–72 (Fla. Dist. Ct. App. 2001).

---

[4] Counts twenty-two, twenty-three, twenty-four, and twenty-six.

Indeed, the Court finds the holding in *Axiom Worldwide, Inc. v. Becerra*, 2009 U.S. Dist. LEXIS 40214 (M.D. Fla. 2009), where the Court dismissed a breach of contract claim against several non-signatories under similar facts, instructive. Like in this case, the *Axiom* Plaintiff sought to extend the terms of a settlement agreement to distributors who were expressly referenced in the agreement, but who were not parties to it. *See id.* at *18. Specifically, the signatory party in that case agreed to have several of its distributors agree to be bound to a non-disparagement provision in the settlement agreement in writing, but this subsequent writing was never executed. Accordingly, the court found that plaintiff failed to allege the existence of a binding contract between it and the non-signatories. *See id.* at *19.[5]

Woodard argues that, notwithstanding the fact that Prestige is not a party to the Settlement Agreement, it should still be bound by it because "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." [D.E. 120, p. 14] (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902 (2009)). However, Plaintiff fails to cite any authority supporting its claim that mere references to a non-signatory in a contract are sufficient to bind that non-signatory to the terms of such contract.

---

[5] Note, however, that in *Axiom* Plaintiffs did not raise any theories for binding non-signatories to a contract, *see generally* [D.E. 34; D.E. 57], and the Court expressly stated it so: "Plaintiffs [did not] allege the existence of other circumstances that would allow Plaintiffs to pursue a breach of contract action against non-parties." *See Axiom*, 2009 U.S. Dist. LEXIS 40214 at *19.

Instead, Plaintiff tries to rely on an Eleventh Circuit case that stands precisely for the proposition that a contract between two corporate entities cannot be binding on a non-party absent facts that would allow piercing the company's corporate vail or the establishment of an agency relationship: "[t]he [settlement] agreement, according to its terms, was between Kraft NA and Whetstone. Absent facts that would allow us to disregard Kraft UK's status as a separate entity, Kraft NA, acting as an importer alone, has no ability to bind Kraft UK, a separate entity, without Kraft UK's permission." *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir. 2003). Although Plaintiff claims that there is "evidence in the record showing that Prestige and [Sunlord] are related, affiliate, and sister companies, such that Prestige is bound by the Settlement Agreement," [D.E. 120, p. 15], the allegations in the Amended Complaint do not amount to one of the limited scenarios that would allow Sunlord to bind Prestige to the agreement under Florida law." *See id.*, at 1074 n 8 (11th Cir. 2003). For instance, nothing in the Amended Complaint suggests that Prestige is a subsidiary of Sunlord, that is dominated or controlled in a way that renders its corporate independence and autonomy non-existent. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

Plaintiff's lack of supporting authority can be explained by the fact that its argument mischaracterizes the effects of the theory of incorporation by reference as applied in the context of binding non-signatories. The effect of incorporation by reference is not to impose upon non-signatories the obligations of a contract in which they are referenced; rather, the theory subjects non-signatories to the terms of a

contract when the non-signatories are parties to a separate agreement that references—and, hence, incorporates—the terms of the contract being enforced. *See Regent Seven Seas Cruises, Inc. v. Rolls Royce, PLC,* No. 06-22347-CIV, 2007 WL 601992, at \*10 (S.D. Fla. Feb. 21, 2007) ("A nonsignatory may be bound by an agreement to arbitrate where the arbitration provision is incorporated by reference in an agreement signed by the nonsignatory.") (citation omitted); *Trustees of Carpenters Health & Welfare Tr. Fund of S. Fla. v. Universal Const. Servs.*, 695 F. Supp. 554, 560 (S.D. Fla. 1988) ("Defendant was bound by the terms of the Memorandum Agreement, therefore, it was bound under the MCA, which was explicitly incorporated by reference within the Memorandum Agreement."); *see also* 127 Am. Jur. Trials 107 ("Incorporation by reference effectively occurs when parties to a primary contract (which has no arbitration provision) incorporate by reference a separate agreement (which requires arbitration), specifically referencing that second agreement with particularity[.]").

Here, however, the only agreement that Woodard points to is the Settlement Agreement, to which Prestige is not a signatory. This Court has found no cases in this Circuit where a non-signatory has been bound to the terms of a contract merely by virtue of being referenced in that contract, nor has Woodard provided any. Accordingly, the Court recommends that count four should be **DISMISSED WITH PREJUDICE**.

### B. *The Tortious Interference Claims (Counts Five and Six)*

In counts five and six, Plaintiff claims that Prestige is liable for tortiously interfering with the Settlement Agreement and Woodard's advantageous business relationships. Based on the allegations in the Amended Complaint, the Court finds that Plaintiff has alleged sufficient facts to state its claims for tortious interference. "Tortious interference with a contract and tortious interference with a business relationship require pleading virtually the same elements." *Drewes v. Cetera Fin. Grp., Inc.*, No. 9:19-CV-80531, 2021 WL 5810634, at *14 (S.D. Fla. Dec. 7, 2021). "The elements of a Florida law tortious interference with contractual relations claim are: (i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018).

Defendant challenges the sufficiency of Plaintiff's tortious interference claims on the basis that the Amended Complaint fails to plead facts establishing causation. With regards to the tortious interference with contract claim, Defendant alleges that "Woodard has not pled that Prestige was the proximate cause of the breach of the Settlement Agreement." [D.E. 119, p. 4]. According to Defendant, the Amended Complaint reveals that Prestige "had nothing to do with the alleged breach," and that the allegations about Prestige's involvement in the scheme are conclusory. Similarly, Defendant objects to the tortious interference with business claim because Plaintiff fails to establish that Prestige's conduct caused Woodard's customers to sever their

business relationship with Woodard. [*Id.*, p. 6]. Based on these alleged deficiencies, Defendant argues that Plaintiff's claims warrant dismissal under its Rule 12(b)(6) motion. The Court disagrees.

First, Defendant does not argue that Plaintiff has failed to plead any of the *prima facie* elements of a claim for tortious interference. Rather, Defendant's causation arguments against the tortious interference claims essentially boil down to a claim that Plaintiff will not be able to prove its case. However, the Court's analysis at this pleading state of the case is not centered on whether Plaintiff will be able to prove its case, but on whether the Amended Complaint contains sufficient factual matter to state a claim for relief that is plausible on its face. *See Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1298 (11th Cir. 2007) ("We are at the pleading stage, not the proof stage"); *Probill, Inc. v. Cumbie L. Off. Automation Consulting, Inc.*, No. 12-80821-CIV, 2013 WL 2158431, at *3 (S.D. Fla. May 17, 2013) (observing that defendant's causation challenge in its motion to dismiss was inappropriate. "All the Plaintiffs need to do at the pleading stage is comply with Rule 8(a), which they have clearly done."); *Re/Max Int'l, Inc. v. Smythe, Cramer Co.*, 265 F. Supp. 2d 882, 892 (N.D. Ohio 2003) ("[Plaintiff] does not need to prove causation at the pleading stage. While it may fail at summary judgment or at trial, it must, at this stage, only allege a 'short and plain statement of the claim showing that the pleader is entitled to relief'"(quoting Fed. R. Civ. P. 8(a)).

Here, the Amended Complaint clearly offers sufficient factual matter to state a claim for tortious interference with contract and business relations against

Defendant Prestige. For starters, the Amended Complaint makes unrebutted allegations that Defendants Lord and Gorr acted on behalf of and in representation of Prestige. Plaintiff claims that Lord described himself to the world as the "Chairman" of both Sunlord and Prestige, while others referred to Lord as the "boss" and "owner" of Prestige. [D.E. 44, ¶¶ 110-113]. Indeed, Lord himself admitted that his trip to Florida in 2020 to meet with local retailers, including Plaintiff's customer Zing Patio, "was *to benefit* Sunlord Leisure Products, Inc., and Prestige International Investments." [D.E. 73.1, ¶ 10] (emphasis added).

The Amended Complaint also states that Prestige played an important role in the scheme that led to the breach of the Settlement Agreement and the interference with Plaintiff's business relations. For instance, Plaintiff makes factual allegations that the Mallin replicas were reproduced and manufactured in Prestige related factories Cong Ty Prestige (in Vietnam) and Dongguan Prestige (in China). [D.E. 44, ¶¶ 141-146, 358-359]. Plaintiff also claims that Prestige shipped the Enjoined Designs and promotional materials featuring these replicas into the United States, where Prestige and co-Defendants sold them to furniture retailers, including retailers that previously purchased the original Mallin designs from Plaintiff [D.E. 44, ¶¶ 42, 157, 186, 364-365], and that Prestige was involved in sham transactions that helped Sunlord avoid detection and be disassociated from the sale of the Enjoined Designs in breach of the Settlement Agreement. [D.E. 44, ¶¶ 168-169; D.E. 120.1, pp. 39-40]; *see also* note 3, *supra*.

Second, even from a causation standpoint, the Amended Complaint sufficiently pleads facts that allow this Court to reasonably infer that Prestige caused a tortious interference with Plaintiff's Settlement Agreement and business relations. "[D]amage is proximately caused by interference only when the interference directly and in natural and continuous sequence produces, or contributes substantially to producing such injury. The alleged violation must be [a] direct, substantial and identifiable cause of the injury that the Plaintiff claims so that, *but for the interference*, the injury would not have occurred." *KMS Rest. Corp. v. Wendy's Int'l Inc.*, 194 F. App'x 591, 603 (11th Cir. 2006) (second alteration and emphasis in original).

Contrary to Defendant's claim that it "had nothing to do with the alleged breach," the Amended Complaint makes several allegations that establish that Defendant's actions caused Plaintiff's injuries. Among other things, the Amended Complaint states that: (1) Prestige, Sunlord, and co-Defendants embarked on a scheme aimed at tortiously interfering with Plaintiff's customers by manufacturing and selling replicas of Plaintiff's Mallin designs; (2) these replicas were reproduced and manufactured in Cong Ty Prestige and Dongguan Prestige in Asia; (3) once the replicas were ready, Prestige shipped them to the United States for sale and marketing; (4) the replicas were indeed marketed and sold to furniture retailers in the United States by Prestige and co-Defendants, including to several of Plaintiff's customers; and (5) Prestige served as a cover that allowed Sunlord to be disassociated from the production and sale of the Enjoined Designs. These allegations alone suggest

that *but for* several of Prestige's alleged actions, before and after the Settlement Agreement was executed, Plaintiff would not have suffered the injuries it claims due to Sunlord's breach of the Settlement Agreement, and Defendants' interference with its business relationships. *See Fin-S Tech, LLC v. Surf Hardware Int'l-USA, Inc.*, No. 13-CV-80645-RYSKAMP/HOPKINS, 2014 U.S. Dist. LEXIS 200704, at *35 (S.D. Fla. Jan. 7, 2014) ("[Causation] requires a plaintiff to demonstrate that 'but for' the defendant's conduct, it would not have suffered such damages") (quoting *AlphaMed Pharms. Corp. v. Arriva Pharms.*, 432 F. Supp. 2d 1319, 1352 (S.D. Fla. 2006)); *Rich v. Fox News Network, LLC*, 939 F.3d 112, 127 (2d Cir. 2019) ("[T]he degree to which the contract would have been breached anyway is a question properly left for discovery and, perhaps, jury determinations. At this stage, we conclude that the complaint sufficiently pleaded causation.")

Defendant challenges the sufficiency of Plaintiff's pleading as to causation because, in its view, "Woodard relies heavily on evidentiary material outside of the complaint . . . [and] no such material may be considered on a motion to dismiss." [D.E. 122, p. 3]. However, this argument is misguided, for it distorts the manner in which Plaintiff has cited to the evidentiary record. Plaintiff's references to the record do not insert new, unstated claims into the Amended Complaint; rather Plaintiff's references to the evidentiary record merely reinforce and provide context to what are otherwise well-pled allegations in the Complaint. For instance, evidence that in 2020 Prestige shipped a container with the "Pasadena" and "Aberdeen" replicas to the United States, [D.E. 120, p. 5], reinforces Plaintiff's allegation that following the

replication of Plaintiff's models, "the Enjoined Designs were shipped into the United States by Prestige . . . ." [D.E. 44, ¶¶ 156, 186]. Likewise, written evidence that Prestige requested the processing of down-payments from Zing Patio (one of Plaintiff's customers) for the sale of "Aberdeen" items, [D.E. 120, p.3], provides context for and reinforces Plaintiff's claim that "Defendant Prestige intentionally and unjustifiably interfered with [Plaintiff's] business relationships." [D.E. 44, ¶ 248]; *see also Love v. Weecoo (TM)*, 774 F. App'x 519, 521 (11th Cir. 2019) ("Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

Prestige's causation argument against the tortious interference with business claim is unavailing for similar reasons. According to Prestige, Plaintiff's claim fails because "Woodard has identified specific furniture retailers that it had an advantageous business relationship with, but fails to show a termination of the business relationships with those retailers or how Prestige induced any of those retailers to sever the business relationship." [D.E. 119, p. 6]. This argument is unpersuasive because "the breach of a business relationship does not specifically require the relationship be severed or the contract not be executed, even though these facts may be indicative of breach and resulting damages." *Persaud v. Bank of Am., N.A.*, No. 14-21819-CIV, 2014 U.S. Dist. LEXIS 120307, at *41 (S.D. Fla. Aug. 27, 2014) (denying motion to dismiss where defendant claims that plaintiff failed to show that interference had resulted in termination of mortgage); *Quality Auto Painting*

*Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1275 (11th Cir. 2019) ("We cannot conclude that the Body Shops' failure to identify particular potential customers who were steered away constitutes a failure to give each defendant fair notice of the claim against it."); *Diamond Resorts*, 2019 WL 3412169 at *10 ([Defendants] argue that the tortious interference claim fails to satisfy Rule 9(b) because the SAC does not plead with specificity the identities of the customers or contractual provisions interfered with. As discussed, supra, this level of detail is not required."); *Haney v. PGA Tour, Inc.*, No. 19-CIV-63108-RAR, 2020 WL 6470157, at *2 (S.D. Fla. Mar. 30, 2020) ("Defendant's allegation that the Complaint does not specifically denote the manner in which Defendant 'pressured' Sirius XM to terminate its business relationship with Plaintiffs is without merit. Plaintiffs need not plead every detail of their claim to survive a motion to dismiss; rather, the pleading standard requires 'enough facts to raise a reasonable expectation that discovery will reveal evidence' of their claims." (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010)).

As noted above, Plaintiff has alleged the existence of multiple business relationships with furniture retailers [D.E. 44, ¶ 246]; that Prestige had knowledge of Plaintiff's business relationships with the furniture retailers [D.E. 44, ¶ 247]; that Prestige intentionally and unjustifiably interfered with those business relationships [D.E. 44, ¶ 248]; and that Plaintiff has been damaged as a result of Prestige's interference. [D.E. 44, ¶ 249]. These allegations are sufficient to state a claim for tortious interference with business against Prestige at this stage of the case. *See*

*Steven Douglas Assocs., Inc. v. Sadovnick*, No. 07-60817-CIV, 2008 WL 11399693, at *4 (S.D. Fla. Oct. 21, 2008) (denying motion to dismiss where Defendant alleged the complaint omitted facts showing that any of the customers were breached or severed because the "applicable pleading standards do not require such specific allegations.").

Finally, Defendant challenges Plaintiff's tortious interference claims under a shotgun pleading theory. Defendant notes that, by "lumping various defendants together, it is impossible to discern which defendant Woodard alleges was the interfering defendant and which purportedly conspired in the interference". [D.E. 122, p. 6]. This argument also fails because, as detailed above, Plaintiff's Amended Complaint has pled allegations that are specific enough to provide Prestige with fair notice of the claims raised against it. *See Quality Auto*, 917 F.3d at 1275 (11th Cir. 2019) (denying  shotgun claim where defendants had fair notice of the claims against them); *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP*, No. 6:19-CV-1908-WWB-EJK, 2021 WL 4948102, at *9 (M.D. Fla. July 6, 2021) (no shotgun pleading where "the factual allegations incorporated into each count [made] clear each of Defendant's purported roles in the alleged scheme to interfere with [Plaintiff's] relationship with its customers and the basis on which [Plaintiff] seeks to hold each Defendant liable.").

Based on the above, the Court concludes that, at this stage of the litigation, Plaintiff has alleged enough facts to state a claim for tortious interference with contract and tortious interference with business relationships against Defendant. For these reasons, Defendant's motion to dismiss counts five and six should be **DENIED**.

### C. *Civil Conspiracy Claims (Counts Twenty-two, Twenty-three, and Twenty-four)*

Plaintiff also advances three counts of conspiracy against Prestige. Plaintiff alleges that Defendant conspired to: (1) tortiously interfere with the Settlement Agreement (count twenty-two); (2) tortiously interfere with Plaintiff's business relationships (count twenty-three); and (3) breach the Settlement Agreement (count twenty-four). Defendants predicate their objection to the conspiracy counts on the assumption that Plaintiff fails to properly plead the tortious interference and breach of contract claims and, as such, there are no underlying wrongs to support a conspiracy [D.E. 119, pp. 7-9; D.E. 122, p. 5]. As detailed above, however, this assumption is correct only with respect to the breach of contract claim. Accordingly, count twenty-four should be dismissed. However, because Plaintiff has properly plead the tortious interference claims against Prestige, its motion to dismiss counts twenty-two and twenty-three should be denied.

### i.   Conspiracy to Tortiously Interfere with Contractual and Business Relations (Counts Twenty-two and Twenty-three)

Defendant's motion to dismiss counts twenty-two and twenty-three should be denied because Woodard has sufficiently alleged the existence of a conspiracy and has articulated specific actions attributable Prestige and its co-Defendants in furtherance of the alleged conspiracy. To state a claim for civil conspiracy under Florida law, Plaintiff must allege: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir.

2009) (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)); *see Witmer v. Dep't of Bus. & Prof'l Regulation, Div. of Pari-Mutuel Wagering*, 631 So. 2d 338, 342 (Fla. 4th DCA 1994) (observing that an "[a]greement is a necessary element of the crime of conspiracy, which is defined as an express or implied agreement of two or more persons to engage in a criminal or unlawful act"); *Nicholson v. Kellin*, 481 So. 2d 931, 935 (Fla. 5th DCA 1985) (stating that "[a] conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose by unlawful means"). Each coconspirator need not act to further a conspiracy; each "need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987) (also stating that "[t]he existence of a conspiracy and an individual's participation in it may be inferred from circumstantial evidence"); *see also Nicholson*, 481 So. 2d at 935 (confirming that an act done in pursuit of a conspiracy by one conspirator is an act for which each other conspirator is jointly and severally liable).

In its Amended Complaint, Woodard alleges that in mid-2018 Prestige and the other defendants in this suit engaged in a scheme to tortiously interfere with Plaintiff's customers and infringe upon Plaintiff's rights by manufacturing, importing, marketing, and selling various knock off versions of Plaintiff's Mallin furniture designs. The Amended Complaint alleges that Prestige has been part of this scheme from its very inception, and Plaintiff cites to electronic communications evidencing that defendants expressly referred to this scheme as "the program" or the

"Mallin project." The Amended Complaint also describes the specific steps that the scheme members took to kick off and execute the scheme, including, among other things, Prestige's role in replicating and manufacturing Plaintiff's designs in foreign factories; shipping the replicas to the United States so they could be marketed and sold to furniture retailers; and selling the replicas through transactions that allowed Sunlord to evade detection and remain disassociated from the production and sale of the replicas. [D.E. 44, ¶¶ 156, 168-169, 186, 246-249, 358-359, 364-365].[6]

Plaintiff also claims that several overt acts in furtherance of the conspiracy took place in Florida. Plaintiff claims that in furtherance of this scheme, Lord travel to Florida in March 2020 to meet with Pfahl and Pfahl Enterprises, and to have in-person meetings with several local furniture retailers, including Plaintiff's customer Zing Patio. The Amended Complaint alleges that Sunlord sold its Aberdeen replicas to Zing Patio, and that Lord and Pfahl were involved in the sale and shipment of furniture items pertaining to the Enjoined Designs to Zing Patio in Florida. [*Id.*, ¶¶ 33-34; D.E. 83, pp. 1, 7, 13]. Lord himself admitted that his trip to Florida in 2020 "was to benefit Sunlord Leisure Products, Inc., and Prestige International Investments." [D.E. 73.1, ¶ 10].

---

[6] To illustrate, Plaintiff will rely on evidence in the record showing that co-Defendant Pfahl shared with co-Defendant Lord product specifications of Plaintiff's designs needed to start manufacturing the replicas; that co-Defendant Gorr instructed Pfahl in Florida to update his price list "for the Mallin project" with new price lists relating to Plaintiff's Mallin Designs; that Pfahl distributed promotional materials for the Enjoined Designs to retailers in Florida; and that Lord and Pfahl were involved in the sale and shipment of Enjoined Designs to Zing Patio in Florida. [D.E. 83, pp. 7, 13, 14].

Finally, Plaintiff alleges that its goodwill and reputation have been harmed and claims economic injury because of the alleged conspiracy in the form of diverted sales. [D.E. 44, ¶ 257]. Plaintiff also claims that Prestige and the other members of the scheme have profited from this alleged conspiracy. [*Id.*, ¶ 368]. Accordingly, Plaintiff has sufficiently alleged the existence of a conspiracy, articulating specific actions attributable to Prestige and its co-Defendants in furtherance of the alleged scheme. *See W. Coast Life Ins. Co. v. Life Brokerage Partners. LLC*, No. 08-80897-Civ-Ryskamp/Vitunac, 2009 U.S. Dist. LEXIS 81650, at *23 (S.D. Fla. Aug. 11, 2009) ("A conspirator 'need not take part in the planning, inception, or successful conclusion of a conspiracy[;]' the conspirator 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'") (quoting *Donofrio v. Matassini*, 503 So.2d 1278, 1281 (Fla. 2d DCA 1987)); *Pafumi v. Davidson*, No. 05-61679-CIV-COHN/SNOW, 2007 U.S. Dist. LEXIS 43138, at *15 (S.D. Fla. June 14, 2007) ("It is not necessary, as Laidlaw contends, that each defendant charged with conspiracy be accused of committing an overt act so long as an overt act, in this case the making of misrepresentations, was committed by at least one co-conspirator."). Based on these allegations, Defendant's motion to dismiss counts twenty-two and twenty-three should be **DENIED**.

### ii.   Conspiracy to Breach Contract (Count Twenty-four)

Count twenty-four should be dismissed for two reasons. First, Plaintiff has failed to plead a claim for breach of contract against Pfahl and Pfahl Enterprises, and without an underlying cause of action there cannot be a conspiracy. *See Corey Airport*

*Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012) ("Without an underlying violation [], no valid conspiracy claim can be shown in this case[.]"); *Alhassid v. Bank of Am.*, N.A., 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) ("Neither Florida nor Nevada recognizes an independent cause of action for civil conspiracy; rather, the plaintiff must allege an underlying illegal act or tort on which conspiracy is based."); *Hercules Cap., Inc. v. Gittleman*, No. 16-CV-81663, 2018 WL 395489, at *24 (S.D. Fla. Jan. 12, 2018) ("An actionable conspiracy requires an actionable underlying tort or wrong") (citation omitted).

A second reason supporting dismissal of this count is that a breach of contract claim alone cannot serve as the basis to support a civil conspiracy claim. Although Plaintiff cites cases allegedly supporting its claim that conspiracy alone can be the predicate to a conspiracy claim, the Court is not persuaded.[7] *See Alhassid*, 60 F. Supp. 3d at 1318 (S.D. Fla. 2014) (noting that "to construe a mere breach of contract claim as a wrong or unlawful act in substantiating a civil conspiracy claim would be inconsistent with the fundamental division between contract and tort actions.") (citation and quotation omitted); *Ardell, Inc. v. Lochiel Expeditions, LTD*, No. 15-60907-CIV, 2016 WL 11600761, at *3 (S.D. Fla. Oct. 21, 2016) ("[T]he Court agrees that breach of contract cannot form the basis for civil conspiracy under Florida law.")

---

[7] As Defendant points out, Plaintiff cites to cases in support of its claim for conspiracy to breach contract, but some of these cases involved conspiracies to procure breach of contract rather than conspiracies to breach contract. *See Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 801 (Va. 1985) (plaintiffs alleged "a conspiracy to interfere with . . . contractual relations," which the court analyzed as a conspiracy "to induce the breach of a contract," also referring to it as "a conspiracy to procure the breach of contract").

(citing *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1281 (11th Cir. 2009));

*Certified Collectibles Grp., LLC v. Globant, LLC*, No. 8:19-CV-1962-SDM-AEP, 2021

WL 1214963, at *6 (M.D. Fla. Mar. 31, 2021) ("Florida law, although not expressly

resolved, counsels that a breach of contract claim cannot sustain a civil conspiracy

claim.") (citing *Alhassid*, 60 F. Supp. 3d at 1317).  Accordingly, count twenty-four

should be **DISMISSED WITH PREJUDICE**.

### D. *Declaratory Judgment (Count Twenty-Six)*

Plaintiff's request for declaratory relief against Prestige should be dismissed

because Plaintiff has failed to properly plead a breach of contract claim against

Defendant, and the requested declaratory relief is limited to rights and interests

arising from the enforcement of the Settlement Agreement.

A court may declare the rights and other legal relations of any interested party

in the case of an actual controversy within its jurisdiction. 28 U.S.C. § 2201. "The only

relevant inquiry in a motion to dismiss a declaratory judgment action is whether or

not the plaintiff is entitled to a declaration of rights." *Fernando Grinberg Trust*

*Success Int. Properties, LLC v. Scottsdale Ins. Co.*, 2010 WL 2510662, at *1 (S.D. Fla.

June 21, 2010) (citing *Gov't Emp. Ins. Co. v. Anta*, 379 So. 2d 1038, 1039 (Fla. 3d DCA

1980)). "[A] trial court should not entertain an action for declaratory judgment on

issues which are properly raised in other counts of the pleadings and already before

the court, through which the plaintiff will be able to secure full, adequate and

complete relief." *Id.* (quoting *McIntosh v. Harbour Club Villas*, 468 So. 2d 1075, 1080-

81 (Fla. 3d DCA 1985)).

Plaintiff seeks a declaration of its rights under the Settlement Agreement vis-à-vis Prestige. [D.E. 44, ¶ 418]. Specifically, Plaintiff seeks a declaration that: (a) Defendants are in violation of the Settlement Agreement; (b) Plaintiff is entitled to remedies as a result of Defendant's breach of the Settlement Agreement; (c) Plaintiff is entitled to specific performance of the Settlement Agreement; and (d) Plaintiff is entitled to attorneys' fees pursuant to the terms of the Settlement Agreement. *Id.* However, Plaintiff has failed to state a claim for breach of the Settlement Agreement against Prestige. *See* Section A, *supra*. Accordingly, Plaintiff's claim for a declaration of its rights and interests under the Settlement Agreement relative to Prestige lacks a justiciable controversy, and, for that reason, should be **DISMISSED without prejudice**. *See Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 133 (S.D. Fla. 2021) ("Because the breach-of-contract claim is dismissed, no controversy exists[,]" and the declaratory relief claims must be dismissed); *Harvest Moon Distributors, LLC v. S.-Owners Ins. Co.*, 493 F. Supp. 3d 1179, 1187 (M.D. Fla. 2020) ("An actual controversy must exist before the Court can afford declaratory relief and, because the breach of contract claim is dismissed, there is no controversy."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, 483 F. Supp. 3d 1189, 1192 (M.D. Fla. 2020) (same).

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss [D.E. 119] be **GRANTED in part** and **DENIED in part**:

A.   Defendant's motion to dismiss count four should be **GRANTED with prejudice**.

B.   Defendant's motion to dismiss counts five, six, twenty-two, and twenty-three should be **DENIED**.

C.   Defendant's motion to dismiss count twenty-four should be **GRANTED with prejudice**.

D.   Defendant's motion to dismiss count twenty-six should be **GRANTED without prejudice**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to order the parties to have **seven (7) days** from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Accordingly, written objections are due by **February 22, 2022**. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 14th day of February, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge